**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Adrian Garr ECTON, Defendant-Appellant.**

**No. 71–2107.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1972.

David Bettencourt (argued), Deputy Public Defender, Brook Hart, Public Defender, Honolulu, Hawaii, for defendant-appellant.

Michael R. Sherwood, Asst. U. S. Atty. (argued), Robert K. Fukuda, U. S. Atty., Honolulu, Hawaii, for plaintiff-appellee.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and SMITH,* District Judge.

RUSSELL E. SMITH, District Judge.

This is an appeal from an order revoking probation.

Appellant was charged in a two-count indictment with conspiracy to rob and robbing a federally insured bank. Both counts related to the Security American Bank, Waikiki Branch, and the date October 19, 1970. Appellant pleaded guilty to count one, and count two was dismissed pursuant to an agreement which had been reached by counsel. Appellant was fined $500.00, sentenced to two years' imprisonment, and placed on probation for five years on the condition that he serve five months in a jail-type institution.

Prior to sentence, appellant was asked by a probation officer whether he had been involved in a robbery of another bank at another time, i. e., the Hawaii National Bank, Waikiki Branch, on September 25, 1970. Appellant, knowing that the interview was for the purpose of a presentence investigation report the contents of which would be given to the judge, denied any connection with the prior robbery.

The presentence investigation report advised the court that the United States

---

* The Honorable Russell E. Smith, Chief Judge of the United States District Court for the District of Montana, sitting by designation.

attorney had information from two individuals (unnamed in the report) that appellant had participated in the September 25th robbery. The presentence report further advised the court that defendant, after being confronted with the United States attorney's allegations of his participation in the other robbery, denied such participation.

At the time of the sentencing hearing appellant's attorney commented on the presentence investigation report as follows:

. . . it refers to a separate crime that the defendant has not been charged with—the bank robbery that occurred on the 25th of September, and I would like to state for the record that Mr. Sherwood was also present at the time—that when we had this line-up involved in this case we also had the witnesses from the other bank robbery, and I think it should be added to this record that one of them stated positively that the defendant was not the man involved in the other bank robbery.

The court was not advised that two participants in the other robbery had implicated the appellant.

At hearing on the petition to revoke probation McCormack, one of the participants in the September 25th robbery, testified that appellant had in fact been one of the robbers.

■ Appellant now contends that since the court had the same information at the time of sentencing as it did at the time of revocation it was an abuse of discretion to revoke probation. There is no doubt but that the United States attorney's office and the probation department knew at the time of sentencing everything they knew at the time of revocation. The evidence did not, however, appear in the same light to the court as it did to the United States attorney or the probation officer. We think, in view of the statements made by appellant's attorney during the sentencing hearing, which seemed to indicate that the other crime reference in the presentence report was based on inconclusive identification evidence rather than upon the statements of other participants in the robbery, that the court was justified in crediting appellant's denial of the other charge and that the record does support its finding that appellant's denials of participation in the other offense were false, and that the court was deceived by them.

■ Trueblood Longknife v. United States, 381 F.2d 17 (9th Cir. 1967), is authority for the proposition that a probation granted as a result of a fraudulent concealment may be revoked in the absence of any post-probation violation.

■■ As a second ground for reversal it is urged that had appellant been allowed to cross-examine the probation officers he would have been able to prove that the petition for revocation was filed to obtain a review of the initial sentence which the chief probation officer believed to be too lenient. The argument on this point is interspersed with claims that the probation office and the court were guilty of mistakes and failures. For the purposes of this opinion we assume that the chief probation officer did file the revocation proceeding to correct what he thought was an improper sentence and we further assume that the United States attorney and the probation office were negligent in presenting the facts to the court and even that the court was negligent in not ferreting out the defendant's falsehood prior to sentence. None of this, however, bears on the defendant's conduct, and it is his conduct which we examine. This is not the kind of a case in which some kind of a prophylactic sanction should be applied to protect the plaintiff from the consequences of his wrongdoing. Here there were no violations of constitutional, statutory, or ethical rules by any of the federal officers involved.[1]

---

1. *See* Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) where a

rule of exclusion is invoked to force state officers to obey the mandate of the 14th

Appellant's argument applied to the facts here is that a defendant should be protected in the falsehoods made in connection with his sentencing by the application of some prophylactic rule which will punish the agents of the United States because they were not alert enough to expose fully appellant's falsehoods given in connection with the sentencing. We refuse to create or apply such a rule.

The judgment is affirmed.

amendment; McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), where a similar exclusion is invoked to force official compliance with statutory law; Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) where the conviction of an entrapped defendant is reversed because of governmental conduct which was not constitutionally or statutorily prohibited but which the Court could not countenance for obviously ethical reasons.