**UNITED STATES of America, Appellee,**

v.

**Anthony DeLUTRO,
Defendant-Appellant.**

**No. 590, Docket 79–1274.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 12, 1979.

Decided March 6, 1980.

Eugene Neal Kaplan, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S.

Atty., S. D. N. Y., Dominic F. Amorosa, Asst. U. S. Atty., New York City, of counsel), for appellee.

H. Elliot Wales, New York City, for defendant-appellant.

Before MULLIGAN, OAKES and GURFEIN *, Circuit Judges.

MULLIGAN, Circuit Judge:

On October 24, 1975, after a five week jury trial in the United States District Court for the Southern District of New York, Anthony DeLutro was found guilty of conspiring to distribute narcotics in violation of Title 21 U.S.C. § 846, and of the actual distribution of a large quantity of pure heroin in violation of Title 21 U.S.C. § 841(a)(1). DeLutro was sentenced by Hon. Irving Ben Cooper on December 3, 1975 as a second felony narcotics offender to concurrent twenty-five year terms of imprisonment, to be followed by a six year parole period. The maximum jail penalty for a second federal narcotics felon is thirty years. 21 U.S.C. § 841(b)(1)(A). On December 10, 1975, while his appeal was pending in this court,[1] DeLutro moved the district court for an order reducing his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure. Judge Cooper denied this motion by an endorsement order on February 18, 1976. No appeal was taken from that denial. DeLutro made two subsequent Rule 35 motions in October 1976 and June 1977. Both were denied and no

appeals were taken. The grounds upon which relief was sought in each of these motions are not germane here.[2] DeLutro, no stranger to the federal court, has also filed two motions to vacate his sentence under 28 U.S.C. § 2255. The denials of these motions were affirmed in this court.[3]

On June 7, 1979, some three and a half years after his sentence had been imposed, DeLutro made his fourth Rule 35 motion, which Judge Cooper denied as untimely on June 14, 1979. On June 26, 1979 DeLutro moved for reconsideration of this ruling. The motion was denied in all respects on July 9, 1979. This appeal from the denial of both motions followed.

I

In this as well as in his first Rule 35 motion, DeLutro argues that Judge Cooper's sentence was based on information with respect to DeLutro's military record that was materially erroneous. The Government responds that the Rule 35 motion is time barred. Rule 35 on its face makes a distinction between "illegal sentences" and sentences "imposed in an illegal manner." The sentencing court may correct an "illegal sentence" at any time. A sentence "imposed in an illegal manner," however, can be reduced only within 120 days of either the date of sentence or that of the last appellate disposition having the effect of upholding or denying review of the conviction.[4] The Government urges

---

* Judge Gurfein heard the argument on December 12, 1979, and indicated his agreement that this motion was untimely filed at a voting conference prior to his death on December 16, 1979.

1. This Court affirmed DeLutro's conviction in September 1976. *United States v. Magnano,* 543 F.2d 431 (2d Cir. 1976), cert. denied, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977).

2. In his October 1976 *pro se* Rule 35 motion, DeLutro alleged that his sentence was illegal because of the sentencing judge's failure to comply fully with the procedures for sentencing a second felony narcotics offender. He asserted in the June 1977 motion that the proof at trial had shown his narcotics activities to be "minimal," and therefore that the sentence imposed was unduly harsh.

3. On November 29, 1977, this Court affirmed Judge Weinfeld's order denying DeLutro's § 2255 motion to vacate his first federal narcotics conviction. *DeLutro v. United States,* 573 F.2d 1289 (2d Cir. 1977). Judge Cooper's later denial of DeLutro's motion seeking the same relief was affirmed on October 1, 1978. *DeLutro v. United States,* 584 F.2d 973 (2d Cir.).

4. At the time DeLutro filed his present motion, Fed.R.Crim.P. 35 provided:

The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for reduction of sentence. The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment

that, even assuming error, the Rule 35 motion was not timely made because a sentence within the maximum term that is based on erroneous information is not "illegal," but rather one "imposed in an illegal manner" and hence subject to the 120 day limitation. The Supreme Court denied DeLutro's petition for a writ of certiorari on February 22, 1977, over two years before he filed this latest Rule 35 motion. See note 1, *supra.*

There is square authority in this circuit to support the Government's position. Where a sentencing judge acted upon a material misapprehension of a prior criminal record, we held that the sentence was not illegal. "The sentence imposed here is well within the statutory maximum . . . . Since the sentence is legal on its face, it is not subject to correction as an illegal sentence under Rule 35." *United States v. Malcolm,* 432 F.2d 809, 814 (2d Cir. 1970). We have also stated that "[a]n illegal sentence for purposes of Rule 35 is one in excess of a statutory provision or otherwise contrary to the applicable statute." *United States v. Huss,* 520 F.2d 598, 602 (2d Cir. 1975). Since the sentence here was concededly within the statutory limit, it is not an illegal sentence and the Rule 35 motion was properly denied as time barred.

In *Malcolm,* this court also stated that "[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." 432 F.2d at 816. DeLutro argues that the sentencing judge relied on materially false information and assumptions, thereby rendering the procedure fatally defective as a deprivation of his due process rights. He therefore urges this court to reverse and remand for a new hearing regardless of the time limitations of Rule 35.

The reversal in *Malcolm,* however, was based not on Rule 35 but on the fact that the appellant had also filed a motion to vacate under 28 U.S.C. § 2255. The court held that it had "power to review a denial of collateral relief on a claim that a sentence is the product of procedures inconsistent with due process of law." *Id.* at 815. DeLutro did not seek collateral relief; his motion was made solely under Rule 35. He is represented by counsel, and has already been an unsuccessful petitioner in two prior section 2255 motions. See note 3, *supra.* Accordingly, we see no reason to consider this a section 2255 motion. *United States v. Huss, supra,* 520 F.2d at 603.

## II

■ Although we affirm the district court's denial of the Rule 35 motion, this is without prejudice to the filing of a later section 2255 motion. In order to understand why we have left the door open for still another attack on appellant's sentence, it is necessary to examine the sentencing proceeding, as well as the substance of DeLutro's first and latest Rule 35 motions, both of which dealt with the events surrounding DeLutro's military discharge.

At the sentencing proceeding, DeLutro's co-defendant Soldano, who received concurrent 15 year sentences because of his implication in the same conspiracy and in a separate sale of heroin, had 5 years "lopped off" the sentence that otherwise would have been imposed because of his 2½ year military service in World War II. His tour of duty included overseas action in the European theater of operations. Soldano was honorably discharged. In sentencing DeLutro, Judge Cooper noted from the probation report that DeLutro had received a discharge that was "under conditions other than honorable" by reason of "desertion

or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law.

The rule was modified, effective August 1, 1979, to permit a judge to reduce a sentence of incarceration to probation. F.R.Crim.P. 35, U.S.C.A. Pamphlet No. 2 (September 1979). For all purposes relevant to this appeal, however, the amended rule is identical to its predecessor.

and physical unfitness." After hearing Judge Cooper's comments about Soldano's service, DeLutro's then counsel engaged in the following colloquy with the court:

MR. JOSEPH PANZER: The defendant has informed me just a few minutes ago that in your remarks your Honor stated the report showed that he was a deserter. He tells me this is not so. The defendant tells me, your Honor—and you have given another man credit for his Army service—that he did serve in the Army, that he—

THE COURT: May I interrupt you?

MR. JOSEPH PANZER: Yes.

THE COURT: I will pick you up on that. You get me proof in an affidavit form, and if that is verifiable you make your application for a re-sentence. But don't make a recital right now. I have only got the Probation report that says that in one clipped, unquestioned sentence. There it is.

So if you have got anything to the contrary, the court invites you to submit proof with regard to it and an application for a reduction of the sentence.

MR. JOSEPH PANZER: Thank you.

In response to this suggestion, DeLutro filed his first Rule 35 motion. The motion was based on his and his counsel's affidavits, which we have examined. DeLutro attested that he was inducted into the Army on July 3, 1945, took eighteen weeks of basic training, and was then shipped to Camp Shanks, New Jersey for overseas service scheduled to begin on December 5, 1945. "Thereafter," DeLutro stated, "a strange series of events followed. Deponent does not remember exactly what happened to him for the following four or five weeks. He does remember that he had approached a military policeman at South Ferry, New York, telling him that he did not knew [sic] where he was. Deponent was taken to a military post at Governers [sic] Island, New York where he was medi-

cally and psychiatrically examined . . ." He was later shipped to Camp Edwards, Mass. where he was advised that he had probably suffered a head injury which caused amnesia. DeLutro admitted receiving a so-called "blue" discharge on February 28, 1946 but stressed that this was not a dishonorable discharge.[5]

DeLutro's attorney's affidavit averred that Judge Cooper had stated during sentencing that DeLutro had received a dishonorable discharge, and that if he was in error he would credit DeLutro with the same five year credit that he afforded Soldano. Reference to the colloquy set forth above indicates that Judge Cooper did not find that DeLutro was discharged dishonorably but rather that he was discharged under conditions which were other than honorable. Moreover, Judge Cooper did not promise anything; he merely invited an application for reduction in sentence. We therefore see no material error made by the judge in denying the motion. He accurately reported the information recited in the probation report, which was in substance confirmed by DeLutro's own affidavit. In any event, Judge Cooper's denial of that motion was never appealed and it cannot now be relitigated.

Only one new fact is recited in the motion now before us on appeal. On January 29, 1979, the Department of the Army advised DeLutro that "after reviewing the findings and conclusion of the Army Discharge Review Board, the Secretary of the Army directed you be informed that your discharge has been changed to Under Honorable Conditions (General). New separation documents are inclosed." The new separation documents were dated February 28, 1946. Judge Cooper is now charged with error because of the subsequent action of the Army.

The Rules and Regulations for the review of discharges and dismissals under Title 10 U.S.C. § 1553 require that, in order to se-

---

5. During World War II, servicemen were discharged under three conditions: "honorable," "dishonorable," and "blue." R. Kimbrough and J. Glen, American Law of Veterans § 149 at p. 105 (2d Ed.1954). A "blue" discharge was one "under other than honorable" conditions. *Peppers v. United States Army*, 479 F.2d 79, 80 (4th Cir. 1973).

cure a reclassification of an Army discharge, an application must be made to a Discharge Review Board. Reclassification is discretionary with the Board; among the factors it considers are changes in discharge policy, quality of service, capability of service, family or personal problems, and arbitrary or discriminatory actions by discharging authorities. 32 C.F.R. § 70.6 (1978). The Board must set forth a statement of its findings, conclusions and the reasons for the actions taken. *Id.* at § 70.5(g)(1). The original record of the proceedings and all appendices must be incorporated in the service record of the applicant. *Id.* at § 70.5(h). Clearly the burden was on DeLutro to establish error, and more was required than the production of a new post-dated discharge.[6] DeLutro's papers contain no material which would indicate the basis for the change in the status of his discharge.

Should appellant hereafter choose to file a section 2255 petition, however, his counsel may be able to produce data which would substantiate his claim. As noted above, we are aware that the sentencing judge made no promises to appellant, and that he retains discretionary power over the terms of sentence. We stress only that this information may aid the judge in evaluating the relevancy of DeLutro's military record.

We therefore affirm the denial of the Rule 35 motion as untimely, without prejudice to DeLutro's making a section 2255 motion predicated upon the records of the Discharge Review Board indicating the basis for the change in status. Whether such motion, if made, has merit will of course be determined by the sentencing judge.

---

**6.** The Probation Department has informed this court that DeLutro's military discharge records were likely destroyed in a fire at the Military Personnel Records Center, St. Louis, Missouri, in 1976. DeLutro's notice of reclassification, however, was dated some three years later. There is nothing to indicate that the records of the Discharge Review Board have met a similar fate.