**STATE of North Dakota, Plaintiff and Appellee,**

**v.**

**William L. FOSTER, a/k/a William Parks, a/k/a John Doe, (a/k/a Robert John Langton), Defendant and Appellant.**

Cr. No. 910389.

Supreme Court of North Dakota.

April 21, 1992.

John T. Goff (argued), State's Atty., Fargo, for plaintiff and appellee.

William L. Foster, pro se.

ERICKSTAD, Chief Justice.

William L. Foster, a/k/a William Parks, a/k/a John Doe, appeals from the judgment and sentence of the District Court for Cass County. We affirm.

On or about April 7, 1990, William L. Foster was arrested for aggravated assault and terrorizing. At the time of the arrest, Foster was using the name Robert John Langton. On or about June 28, 1990, Foster appeared before the Honorable Michael McGuire and plead guilty to the charges under the assumed name of Robert John Langton. A presentence investigation was likewise conducted in the name of Robert John Langton. On August 10, 1990, Judge McGuire sentenced Foster under the assumed name to three years in the State Penitentiary, with all but 125 days suspended with credit for 125 days already spent in custody, and was placed on supervised probation. The same sentence was imposed on each count to be served concurrently. On August 30, 1990, Foster's probation was revoked and he was ordered to serve the balance of the previously imposed sentence at the State Penitentiary, with credit for time already served.

Apparently personnel at the State Penitentiary eventually learned of Foster's true identity and notified Judge McGuire, who in turn notified the Cass County States Attorney's Office.[1] Pursuant to a writ of habeas corpus ad prosequendum, Foster was returned to Cass County to be resentenced. After a presentence investigation was conducted under his true identity,[2] Foster was resentenced to five years in the State Penitentiary on both counts, to be served consecutively, with one year suspended on count two. Credit for previous time spent in custody was given for the initial credit of 125 days spent in custody prior to the initial sentencing, plus credit for time spent in custody between the resentencing date and the date Foster's probation was revoked.

On appeal, Foster, appearing pro se, asserts that the trial court had no authority to resentence him under any North Dakota rule or statutory provision, and the trial court's act of resentencing him violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitu-

---

1. Prison officials apparently learned of Foster's true identity, in part, due to the fact that the real Robert John Langton was receiving governmental benefits which were terminated after it was reported that he was in prison.

2. The criminal record established under Foster's true identity was apparently substantially more extensive than the criminal record revealed under the identity of Robert John Langton.

tion.[3]

■ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, "consists of three separate constitutional protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' [Footnotes omitted.]" *State v. Jones*, 418 N.W.2d 782, 784 (N.D. 1988), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In this case, Foster asserts that by being resentenced after he had already begun serving his initial sentence, he is being subjected to multiple punishments for the same offense. We disagree.

The United States Supreme Court, in *United States v. DiFrancesco*, 449 U.S. 117, 134, 101 S.Ct. 426, 436, 66 L.Ed.2d 328 (1980), noted that a "sentence does not have the qualities of constitutional finality that attend an acquittal." Thus the United States Supreme Court concluded that the Government could constitutionally seek appellate review and increase of a sentence under 18 U.S.C. section 3576. The Court in *DiFrancesco* said:

"The Double Jeopardy Clause does not provide the defendant with the right to know at any specific moment in time what the exact limit of his punishment will turn out to be. Congress has established many types of criminal sanctions under which the defendant is unaware of the precise extent of his punishment for significant periods of time, or even for life, yet these sanctions have not been considered to be violative of the Clause. Thus, there is no double jeopardy protection against revocation of probation and the imposition of imprisonment. *See e.g., Thomas v. United States*, 327 F.2d 795 (CA10), cert. denied, 377 U.S. 1000, 84 S.Ct. 1936, 12 L.Ed.2d 1051 (1964). There are other situations where proba-

tion or parole may be revoked and sentence of imprisonment imposed. *See e.g. United States v. Kuck*, 573 F.2d 25 (CA10 1978); *United States v. Walden*, 578 F.2d 966, 972 (CA3 1978), cert. denied, 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Jones*, 540 F.2d 465 (CA10 1976), cert. denied, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *Dunn v. United States*, 182 U.S.App.D.C. 261, 561 F.2d 259 (1977). While these criminal sanctions do not involve the increase of a final sentence, and while the defendant is aware at the original sentencing that a term of imprisonment later may be imposed, the situation before us is different in no critical respect. Respondent was similarly aware that a dangerous special offender sentence is subject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked."

101 S.Ct. at 437.

In discussing *DiFrancesco*, the Court of Appeals for the Eleventh Circuit said:

"We are able to draw two lessons from that opinion. First, the Double Jeopardy Clause bars multiple punishment, *i.e.*, punishment in excess of that permitted by law. Second, the Double Jeopardy Clause respects the defendant's 'legitimate expectations' as to the length of his sentence....

*  *  *  *  *  *

"The second principle, that the 'legitimate expectations' of the defendant are protected by the Double Jeopardy Clause, also is rooted in *DiFrancesco*. The relevance of the defendant's expectations stems from one of the purposes of the Double Jeopardy Clause—to avoid repeatedly subjecting the defendant to 'embarrassment, expense, anxiety, and insecurity in the possibility that he may be found guilty even though innocent.'

**3.** We note that the trial court orally denied Foster's motion to allow him to withdraw his guilty plea as well as a number of other mo-

tions. However, Foster has not raised these as issues on appeal. Accordingly, we do not address them.

Although these factors are of less concern in sentencing, after the defendant already has been found guilty, they were nonetheless central to the *DiFrancesco* decision. . . .

\* \* \* \* \* \*

"For the purpose of determining the legitimacy of a defendant's expectations, we draw a distinction between one who intentionally deceives the sentencing authority or thwarts the sentencing process and one who is forthright in every respect. Whereas the former will have purposely created any error on the sentencer's part and thus can have no *legitimate* expectation regarding the sentence thereby procured, the latter, being blameless, may *legitimately* expect that the sentence, once imposed and commenced, will not later be enhanced. Under this analysis, unless the statute explicitly provides for sentence modification, as in *DiFrancesco*, or the defendant knowingly engages in deception, a sentence may not be altered in a manner prejudicial to the defendant after he has started serving the sentence."

*United States v. Jones,* 722 F.2d 632, 637–639 (11th Cir.1983) (citations omitted) (emphasis in original).

In a case with facts similar to our case, the Florida Supreme Court said:

"Goene intentionally committed fraud upon by the court by falsely stating his identity. Knowing that the sentence originally imposed was lower than a sentence which would have been imposed had his true identity been revealed, because of the absence of his prior criminal history, Goene should have realized that if the falsity of his statements was revealed, his freedom would be affected by reimposition of a correct sentence. Goene therefore had no legitimate expec-

tation of finality in the sentence originally imposed and there is no double jeopardy prohibition against reimposition of a correct sentence."

*Goene v. State,* 577 So.2d 1306, 1309 (Fla. 1991).

With the foregoing in mind, we conclude that Foster had no legitimate expectation of finality in his original sentence. The resentencing was justified because of Foster's deception in assuming another person's identity to avoid consideration of his own extensive criminal record. Foster not only identified himself as Robert John Langton but he also carried identification cards for Robert John Langton.[4] A person should not be permitted to assume someone else's identity to avoid the consequences of the sentencing court learning of his criminal record, and expect that the sentence imposed will be final and not later subject to modification upon the discovery of his or her true identity. Accordingly, we find no double jeopardy violation.

■ Regarding a trial court's authority to modify a final judgment of conviction, we have said, as a general proposition: "when a 'case has been tried, judgment of conviction has been rendered, and sentence has been pronounced, the court loses its jurisdiction.' At this point, any attempt by the trial court to amend or modify a final judgment is void unless it is made upon grounds provided by statute or by the Rules of Criminal Procedure for correcting or amending a judgment." *State v. Meier,* 440 N.W.2d 700, 702 (N.D.1989), quoting *John v. State,* 160 N.W.2d 37, 41 (N.D. 1968). In this case, the trial court apparently resentenced Foster pursuant to Rule 35, N.D.R.Crim.P.[5]

Rule 35, N.D.R.Crim.P., based on Rule 35 of the Federal Rules of Criminal Proce-

---

**4.** At oral argument, Foster indicated that he had found or been given a foodstamp card belonging to Robert John Langton which he had then used to procure a replacement social security card with the same number as was on the foodstamp card.

**5.** We note that none of the documents relating to resentencing Foster mentioned Rule 35,

N.D.R.Crim.P. However, when Foster asked Judge McGuire what gave him the authority to resentence him, McGuire answered that Rule 35, N.D.R.Crim.P., gave him such authority to correct an illegal sentence. Also, on appeal, the State asserts that resentencing was done pursuant to Rule 35, N.D.R.Crim.P.

dure,[6] reads in relevant part:

"(a) *Correction of sentence.* The sentencing court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

"(b) *Reduction of sentence.* The sentencing court may reduce a sentence within 120 days after the sentence is imposed or probation is revoked...."

Because our rules are based upon corresponding federal rules we often look to federal court interpretation of federal rules for guidance, although we are not bound by that construction. *State v. Valgren,* 411 N.W.2d 390, 393 (N.D.1987).

Foster cites *United States v. Fischer,* 821 F.2d 557 (11th Cir.1987), for the proposition that his sentence was not illegal within the meaning of Rule 35, N.D.R.Crim.P. In *Fischer,* the Eleventh Circuit Court of Appeals held that alleged material errors in a presentence report did not render a sentence illegal within the meaning of Rule 35, Fed.R.Crim.P. *See also United States v. DeLutro,* 617 F.2d 316, 318 (2nd Cir.1980).

Notwithstanding the above-noted federal authority, we conclude that where a defendant misleads a court and is thereby sentenced under someone else's identity, the sentence is an illegal sentence subject to modification under Rule 35, N.D.R.Crim.P. Any other conclusion would encourage the use of aliases to defeat justice. A court of law should not construe either constitutional provisions or court rules to aid in such an endeavor.

▪ Apart from Rule 35, N.D.R.Crim.P., we recognize that, as a general proposition, a court of law has the inherent authority to correct judgments obtained through fraud.

In *United States v. Bishop,* 774 F.2d 771 (7th Cir.1985), the Court of Appeals for the Seventh Circuit held that a court has the inherent power, separate and apart from Rule 35, Fed.R.Crim.P., to correct a sentence which was based upon fraudulent information given by the defendant. *See also United States v. Ecton,* 454 F.2d 464, 466 (9th Cir.1972) (*"Trueblood Longknife v. United States,* 381 F.2d 17 (9th Cir. 1967), is authority for the proposition that a probation granted as the result of a fraudulent concealment may be revoked in the absence of any post-probation violation."). Thus, we conclude that the trial court had authority to resentence the defendant in this case, separate and apart from Rule 35, N.D.R.Crim.P.

For the aforementioned reasons the judgment of the district court is affirmed.

VANDE WALLE and JOHNSON, JJ., concur.

LEVINE, Justice, concurring in result.

I write separately to stake out the narrow parameters of our decision, at least, as I believe them to be.

The crux of this case is the false identification. The holding that a false identification leads to an illegal sentence under Rule 35(a), NDRCrimP, may be a clumsy vehicle to reach a result that protects the integrity of the administration of justice but I agree it is a reasonable one under the circumstances. A defendant's correct identity is the sine qua non of the administration of justice. I think it is also significant that a person's identity is not usually protected by the Fifth Amendment because it is not testimonial but simply part of the "booking" routine in administering the criminal justice system. *Gladden v. Roach,* 864 F.2d 1196 (5th Cir.1989); *United States v. Miller,* 589

---

6. We note that Rule 35 of the Federal Rules of Criminal Procedure has been substantially changed from earlier versions of Rule 35, as part of the Comprehensive Crime Control Act of 1984, P.L. No. 98–473, the Anti–Drug Abuse Act of 1986, P.L. No. 99–570, and the Sentencing Reform Amendments Act of 1985, P.L. No. 99–217, and, in its present form, is substantially different from Rule 35 of the North Dakota Rules of Criminal Procedure. However, the Sentencing Act of 1987, P.L. No. 100–182, amended section 235(a)(1) of the Comprehensive Crime Control Act to reflect that application was to apply only to offenses committed after the effective date. Thus, the old Federal Rule 35, which is substantially similar to North Dakota Rule 35, still applies to offenses committed prior to the effective date of the changes (November 1, 1987). *See* 8A Moore's Federal Practice Chap. 35 (1992).

F.2d 1117 (1st Cir.1978); *Spinelli v. United States*, 382 F.2d 871 (8th Cir.1967).

Under Rule 35(a), NDRCrimP, Foster's sentence was illegal because the wrong person was sentenced. Robert John Langton did not commit any crime. William L. Foster did. But Foster did not receive a sentence; Langton did.

I have some concern that this decision will be used as a catapult to reopen all kinds of judgments. This case does not, however, support the proposition that every time a defendant "misleads" the court, that defendant's sentence becomes "illegal" and subject to change when the deception is uncovered. If that were the case, finality would be as scarce as a balanced federal budget. The general rule still is that the court loses jurisdiction after sentence has been pronounced. *State v. Meier*, 440 N.W.2d 700 (N.D.1989); *State v. Bucholz*, 403 N.W.2d 400 (S.D.1987).

If Foster had truthfully identified himself but untruthfully described his past record or failed to disclose it, the result would be different. *Meier, supra; Bucholz, supra.* The trial court would have no jurisdiction under Rule 35(a), NDRCrimP, to "correct" the sentence because the sentence would not be illegal.

I agree that because Langton gave a fraudulent identification, his original sentence was illegal and the court had the authority to right a wrong. I, therefore, concur in the result.

MESCHKE, J., concurs.