2009 ND 38

**STATE of North Dakota, Plaintiff**

v.

**Jamie LEINGANG, Defendant
and Appellee**

**Dean Kessel, Petitioner and Appellant.**

No. 20080168.

Supreme Court of North Dakota.

April 2, 2009.

Irvin B. Nodland, Irvin B. Nodland, PC, Bismarck, N.D., for defendant and appellee.

Richard B. Baer, Richard B. Baer, PC, Bismarck, N.D., for petitioner and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]  Dean Kessel appealed from a district court order dismissing his petition to hold Jaime Leingang in contempt in a proceeding in which Kessel, the victim of Leingang's criminal conduct, claimed Lein-

gang had failed to pay restitution under an order deferring the imposition of a criminal sentence. Kessel also appealed from an order denying his motion for reconsideration. We hold Kessel was not entitled to an order finding Leingang in contempt and Kessel does not have standing to challenge the district court's decision granting Leingang's request to withdraw his guilty plea and dismissing the criminal charges against Leingang. We affirm.

I

[¶ 2] In October 2004, Leingang pled guilty to aggravated assault, a class C felony, and burglary, a class B felony, stemming from his participation with another criminal defendant, Robert Rutherford, in an unauthorized entry into Kessel's home and an assault on Kessel. The district court deferred the imposition of sentence against Leingang and placed him on probation for five years. The court's order required Leingang to make restitution to Kessel after the amount was determined at a restitution hearing and also provided:

> At the expiration of or within the probation period, the Court, in its discretion, may permit [Leingang] to withdraw his plea or verdict of GUILTY. The verdict or plea of GUILTY may then be set aside and the action dismissed. The discretion of the Court will be based upon the record of [Leingang] during the period of probation and predicated upon [Leingang's] compliance with each of the above terms and conditions.

[¶ 3] After a February 2006 restitution hearing, the district court issued an amended deferred imposition of sentence requiring Leingang to make restitution to Kessel "in the amount of $14,773.21 joint and several, payable to the Burleigh County States Attorney's Office by certified check or money order with monthly pay-

ments to be determined by the probation officer based on [Leingang's] ability to pay."

[¶ 4] Kessel subsequently obtained a civil judgment against Leingang and Rutherford, holding Leingang ten percent and Rutherford ninety percent at fault for Kessel's damages. In that civil action, a jury awarded Kessel $1,165 in economic damages and $97,000 in non-economic damages. In May 2006, Leingang paid Kessel $9,935.05 by check, which included a memo notation "Restitution–Law Suit."

[¶ 5] In October 2007, Leingang petitioned the district court to withdraw his guilty plea, to enter a not guilty plea, and to dismiss the criminal charges against him. Leingang's petition asserted he had "complied with the terms and conditions set forth in the deferred order." Leingang's petition also stated his probation officer had "request[ed] granting" the petition and an assistant state's attorney "concur[red]." On October 11, 2007, the district court granted Leingang's petition to withdraw his guilty plea, entered a not guilty plea, and dismissed the criminal charges. The court's decision stated it was based upon the "recommendation" of Leingang's probation officer.

[¶ 6] On February 13, 2008, Kessel sought an order holding Leingang in contempt for failing to pay the restitution ordered in the criminal action. In an affidavit, Kessel, claimed he had "received nothing [in restitution] from either defendant. Mr. Rutherford is in prison and will likely be there for some time. He has paid nothing.... Mr. Leingang was never put in jail. He was employed throughout his probationary period and is currently employed. He has paid nothing." Leingang sought "the restitution amount plus interest at the legal rate plus [his] attorney fees and expenses for having to bring this before the court."

[¶ 7]   Leingang asked the court to deny Kessel's application for a contempt order and submitted an affidavit claiming:

1.   The two sworn statements contained in Mr. Kessel's affidavit that to-date he has received nothing from me [are] false.  I paid the applicant, Dean Kessel $9,935.05 on the 6th day of May 2007.  This was the full amount of a judgment that was granted in Mr. Kessel's favor and against me for any contribution I may have made to his injury.  I was assured by [the] Burleigh County State's Attorney ... that this would be applied to my restitution and as far as they were concerned my part was done.

2.   The restitution Mr. Kessel is attempting to collect is a duplicate of an amount already paid.

[¶ 8]   After an evidentiary hearing, the district court dismissed Kessel's request to hold Leingang in contempt, concluding the court's jurisdiction was terminated by the order granting Leingang's petition to withdraw his guilty plea, entering a not guilty plea, and dismissing the criminal charges. The court said none of the conditions to modify or reduce a sentence in N.D.R.Crim.P. 35 existed and its jurisdiction in the criminal action ended upon termination of probation.  The court further explained that Kessel had fully prosecuted Leingang's criminal conduct in the civil action and Leingang had paid the amount determined by the jury in that action.  The court observed that Leingang's petition to withdraw his guilty plea was based on a joint recommendation by the state's attorney and probation officer to terminate the order deferring the imposition of sentence because Leingang had satisfied the conditions of the deferred sentence.  The court said although Kessel claimed there was additional restitution owed, the jury verdict in the civil litigation provided a complete opportunity to assess economic and non-economic damages.

[¶ 9]   Kessel moved for reconsideration and submitted an affidavit, stating:

3.   That because that money was ordered to be paid by this court, I had made attempts to receive the money by calls to the victim advocate assigned to my case, calls to Mr. Leingang's parole officer and calls to [the] Assistant State's Attorney.... No one wanted to discuss it but rather passed the buck with such statements as, "The parole officer is in charge of that," or "The PO will take care of it."  Other responses were, "Its up to the state's attorney." The bottom line is that my calls went nowhere.

4.   That the money in the civil case ... had nothing to do with the amount ordered in this case.  In fact the restitution amount was not addressed in pleadings, arguments, evidence, jury instructions or the special jury verdict.  The check paid by [Leingang] had nothing at all to do with restitution.

5.   That to date I have received nothing from Mr. Rutherford or Mr. Leingang pursuant to the criminal court orders.

6.   That as a victim I was never advised that Mr. Leingang was having any post-judgment proceedings or motions as required by N.D.C.C. 12.1–34–02(4). Nor was I advised of other reparations or programs (subsection 5).  No information was given to me pursuant to subsections 15 and 17.

[¶ 10] The State resisted Kessel's motion for reconsideration, asserting he was not a party to the criminal action and lacked standing in the proceeding.  The district court denied Kessel's motion for reconsideration.

## II

[¶ 11] Kessel argues the district court had jurisdiction to correct a substantial injustice and erred in deciding it lacked jurisdiction. He contends the court had jurisdiction under its contempt powers in N.D.C.C. § 27–10–01.1(1)(b), under its authority to correct illegal sentences in N.D.R.Crim.P. 35, under its inherent power to correct fraud, and under its power to review probation in N.D.C.C. § 12.1–32–07(7).

[¶ 12] Under N.D.C.C. § 12.1–32–02(1)(b) and (e), a district court's sentencing alternatives include probation and restitution. *See also* N.D.C.C. §§ 12.1–32–07(4) and 12.1–32–07.1(2). A court also may defer the imposition of sentence and order probation during the period of deferment. N.D.C.C. § 12.1–32–02(4). For a deferred imposition of sentence for a felony, the length of probation may not exceed five years but the court may terminate the probation and discharge the defendant earlier if warranted by the defendant's conduct and the ends of justice. N.D.C.C. § 12.1–32–06.1(1) and (6). Before imposing restitution, the court must order a restitution hearing. N.D.C.C. § 12.1–32–08. Under N.D.C.C. § 12.1–32–08(1):

> Any payments made pursuant to the [restitution] order must be deducted from damages awarded in a civil action arising from the same incident. An order that a defendant make restitution or reparation as a sentence or condition of probation may, unless the court directs otherwise, be filed, transcribed, and enforced by the person entitled to the restitution or reparation or by the division of adult services in the same manner as civil judgments rendered by the courts of this state may be enforced.

[¶ 13] The district court's deferred imposition of sentence and restitution order did not preclude Kessel from "[f]iling, transcrib[ing], and enforc[ing]" the order "in the same manner as civil judgments . . . may be enforced." Kessel nevertheless claims Leingang did not satisfy the restitution conditions for his probation and sought an order holding Leingang in contempt under N.D.C.C. § 27–10–01.1(1)(b), which provides that contempt of court means the "[i]ntentional nonpayment of a sum of money ordered by the court to be paid in a case when by law execution cannot be awarded for the collection of the sum." Under that language, this Court has held that a court's contempt powers are not available when sums of money can be collected through the process of execution. *Dvorak v. Dvorak,* 329 N.W.2d 868, 873 (N.D.1983). Kessel was the beneficiary of the restitution order and was entitled to enforce that order in the same manner as a civil judgment. Although Kessel asserts the verdict in the civil case had nothing to do with the restitution ordered in the criminal case, Kessel's claim is contrary to the requirements of N.D.C.C. § 12.1–32–08(1), which says that any payments under a restitution order must be deducted from damages awarded in a civil action arising from the same incident. Under that statute, Kessel's damages under the restitution order should have been raised in any civil action arising from the same incident. Leingang's purported nonpayment of the restitution order was not contempt under N.D.C.C. § 27–10–01.1(1)(b), and we therefore conclude Kessel was not entitled to an order holding Leingang in contempt under that statute.

[¶ 14] Kessel nevertheless claims the district court's decision was based on false information and asserts the court had jurisdiction under N.D.R.Crim.P. 35 to correct an illegal sentence, under the court's inherent authority to correct fraud, and under the court's post-termination au-

thority to modify probation in N.D.C.C. § 12.1–32–07(7).

[¶ 15] Under N.D.R.Crim.P. 35, a sentencing court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time for the reduction in a sentence. *See State v. Foster*, 484 N.W.2d 113, 116–17 (N.D.1992) (concluding a sentence is illegal and subject to modification under N.D.R.Crim.P. 35 where the defendant misleads the court and is sentenced under someone else's identity). We generally have recognized a sentence is illegal under N.D.R.Crim.P. 35(a) if the judgment of conviction does not authorize the sentence, and we have said an illegal sentence is a sentence in excess of a statutory provision or the applicable statute, a sentence that fails to comply with a promise of a plea bargain, or a sentence that fails to conform to an oral pronouncement of the sentence. *State v. Edwards*, 2007 ND 113, ¶ 5, 736 N.W.2d 449. Kessel's claims do not satisfy those requirements for an illegal sentence. This Court also has said a court has inherent authority to correct a criminal judgment obtained through fraud. *Foster*, at 117. Under N.D.C.C. § 12.1–32–07(7), a "court may continue or modify probation conditions or revoke probation for a violation of probation occurring before the expiration or termination of the period of probation notwithstanding that the order of the court is imposed after the expiration or termination has occurred," provided the petition for revocation is filed within sixty days of the expiration or termination of probation.

[¶ 16] The authorities cited by Kessel generally contemplate that the State and the criminal defendant are the parties to the criminal proceeding under North Dakota law, which defines a criminal action as an action "prosecuted by the state as a party against a person charged with a public offense for the punishment thereof." N.D.C.C. § 32–01–05. *See Olsen v. Koppy*, 1999 ND 87, ¶ 9, 593 N.W.2d 762. Kessel's status as a victim raises issues about his standing to challenge the district court's order terminating Leingang's probation and dismissing the criminal action against Leingang.

[¶ 17] Standing is a threshold issue to determine whether a party is entitled to have a court decide the merits of a dispute and is a question of law, which we review de novo. *Flatt v. Kantak*, 2004 ND 173, ¶ 38, 687 N.W.2d 208. A litigant may have a court decide the merits of a dispute only after demonstrating standing to litigate the issue before the court. *State v. Tibor*, 373 N.W.2d 877, 879 (N.D.1985). In *State v. Carpenter*, 301 N.W.2d 106, 107 (N.D.1980) (citations omitted), this Court explained requirements for standing:

The question of standing focuses upon whether the litigant is entitled to have the court decide the merits of the dispute. It is founded in concern about the proper—and properly limited—role of the courts in a democratic society. Without the limitation of the standing requirements, the courts would be called upon to decide purely abstract questions. As an aspect of justiciability, the standing requirement focuses upon whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to justify exercise of the court's remedial powers on his behalf. The inquiry is two-fold. First, the plaintiff must have suffered some threatened or actual injury resulting from the putatively illegal action. Secondly, the asserted harm must not be a generalized grievance shared by all or a large class of citizens; the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights and interests of third par-

ties. When a person is subject to a criminal prosecution, or is faced with its imminent prospect, that person has clearly established the standing requirements to oppose the prosecution by asserting his relevant constitutional rights.

[¶ 18] The United States Supreme Court has said that in a criminal prosecution a private citizen generally lacks standing to contest the policies of the prosecuting attorney when the private citizen is neither prosecuted nor threatened with prosecution. *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973). Federal courts have held that a criminal victim generally lacks standing to challenge restitution orders under both the federal constitutional requirements for standing and prudential limitations for standing. *See United States v. United Sec. Sav. Bank,* 394 F.3d 564, 567 (8th Cir.2004) (stating criminal restitution order is penal not compensatory and holding victim failed to show it suffered injury from restitution order and lacked standing to challenge order); *United States v. Mindel,* 80 F.3d 394, 396–98 (9th Cir.1996) (holding victims, beneficiaries of rescinded criminal restitution order, did not suffer injury in fact, did not have private remedy to sue or to appeal restitution decisions under federal statute for victims' rights, and did not have standing to appeal order rescinding restitution payments); *United States v. Johnson,* 983 F.2d 216, 218–21 (11th Cir.1993) (stating restitution order served penal interest of government and not compensatory interest of victims; holding victims did not suffer injury in fact for purposes of standing and federal statute for victims' rights did not confer standing); *United States v. Grundhoefer,* 916 F.2d 788, 791–93 (2nd Cir. 1990) (holding victim lacked standing to challenge terms of restitution order because victims did not suffer injury in fact and federal statute for victims' rights did

not provide victims with enforceable right to restitution).

[¶ 19] State courts also have held that victims are not parties to a criminal prosecution and generally do not have standing to challenge compliance with laws for victims' rights. *See Cooper v. District Court,* 133 P.3d 692, 695–714 (Alaska Ct.App. 2006) (rejecting various arguments that victim had standing to challenge criminal sentence); *Lamb v. Kontgias,* 169 Md.App. 466, 901 A.2d 860, 864–69 (2006) (holding victim was not party to criminal prosecution and did not have standing to appeal lack of notice and opportunity to speak at hearing to reconsider sentence); *Commonwealth v. Malloy,* 304 Pa.Super. 297, 450 A.2d 689, 693 (1982) (holding criminal victim was not a party to criminal prosecution and did not have standing to appeal decision dismissing complaint); *In re State ex rel. Sistrunk,* 142 S.W.3d 497, 502–03 (Tex. Ct.App.2004) (holding victim's family had no standing to challenge defendant's sentence or procedures at sentencing hearing).

[¶ 20] The foregoing authorities support a conclusion that citizens or victims who are not parties to a criminal action do not have standing to challenge prosecutorial or judicial decisions in the action. Although Kessel was the victim of Leingang's criminal conduct and was a beneficiary of the court's restitution order, Kessel was not a party to the criminal prosecution and did not suffer an injury recognized by law as a result of the district court's decision to terminate Leingang's probation. We therefore conclude Kessel does not have standing to challenge the district court's order.

[¶ 21] Moreover, N.D.C.C. ch. 12.1–34, which generally provides for fair treatment of victims and witnesses, does not give Kessel standing. Under that chap-

ter, "victims ... of crime must be afforded [several] rights where applicable," including: (1) information from law enforcement authorities about the status of the investigation; (2) notice by the prosecuting attorney of the filing of criminal charges and the pretrial status of the prosecution; (3) notice of pretrial release; (4) notice of court proceedings; (5) notice of available services, including crime victim's compensation under N.D.C.C. ch. 54–23.4; (6) notice of the availability of employer intercession services; (7) notice of the procedure for receiving witness fees; (8) rights regarding the return of property; (9) the right to a waiting area separate from the defendant, the defendant's family, and the defendant's witnesses; (10) protection of identifying information; (11) the right to be present through trial except as provided by N.D.R.Ev. 615; (12) the right to a prompt disposition of the case; (13) the right to notice of a hearing where a plea will be entered and to notice of a sentencing hearing; (14) the right to make and submit a victim impact statement; (15) notice of final disposition of the case and parole procedures; (16) prompt notice of a defendant's custodial release; and (17) the right to participate in parole board and pardon decisions. N.D.C.C. § 12.1–34–02. *See also* N.D.C.C. § 12.1–34–04 (stating each prosecuting attorney is responsible for securing the rights and services described in chapter for victims). However, N.D.C.C. § 12.1–34–05 limits claims for the failure to provide a right, privilege, or notice to a victim:

Nothing in this chapter may be construed as creating a cause of action for money damages or injunctive relief against the state, county, municipality, or any of their agencies, instrumentalities, or employees. Furthermore, the failure to provide a right, privilege, or notice to a victim under this chapter is not grounds for the defendant to seek to have the conviction or sentence set aside. This chapter does not limit any rights to which victims and witnesses of crime are otherwise entitled.

[¶ 22] The language of N.D.C.C. § 12.1–34–05 precludes a victim from seeking money damages or injunctive relief for a violation of the rights included in that chapter and precludes a defendant from having a conviction or sentence set aside for failure to provide the victim with a right, privilege, or notice under that chapter. The legislative history for that statute recognizes a "concern relative to enforcement" and "that the enforcement provisions may not be tough enough," but the proponents of the legislation opted for "educative rather than punitive legislation" in part, because an existing criminal law, N.D.C.C. § 12.1–11–06, provided that any public servant who knowingly refused to perform any duty imposed upon him by law was guilty of a class A misdemeanor and was "sufficient for now." *Hearing on HB 1190 Before the House Judiciary Comm.*, 50th N.D. Legis. Sess. (Jan. 21, 1987) (written testimony of Richard J. Gross, Governor's Legal Counsel). Other than N.D.C.C. § 12.1–34–05 and the reference to N.D.C.C. § 12.1–11–06, no other provision relating to enforcement was included in the proposed or enacted legislation. We conclude the victim's rights enunciated in N.D.C.C. ch. 12.1–34 do not give Kessel standing under N.D.R.Crim.P. 35, the court's inherent authority to correct fraud, or N.D.C.C. § 12.1–32–07(7) to contest the court's order terminating Leingang's probation and dismissing the criminal action against him.

[¶ 23] Although Kessel claims he was not given notice of the proceeding, the remedy he seeks, contempt, was not available because Kessel was entitled to enforce the restitution order in the same manner

as a civil judgment. *See* N.D.C.C. § 12.1–32–08(1). Because Kessel was not a party to the criminal action, we conclude he does not have standing to challenge the court's order terminating Leingang's probation and dismissing the criminal action against Leingang.

### III

[¶ 24] We affirm the order denying Kessel's request to hold Leingang in contempt and the order denying Kessel's motion for reconsideration.

[¶ 25] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.