901 A.2d 860

**Anne LAMB, et al.**

v.

**Jack KONTGIAS and State of Maryland.**

**No. 0583, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

July 3, 2006.

Russell P. Butler (Tracy M. Delaney, on the brief,) Upper Marlboro, MD, for Appellant.

David Martella, Rockville, MD, for Appellee.

Panel: DAVIS, SALMON and ADKINS, JJ.

ADKINS, J.

Does a registered victim of child sexual abuse, who, in error, was not notified of a hearing to reconsider her assailant's sentence, have standing to challenge a judgment vacating the original conviction and sentence in favor of probation before judgment? Following *Cianos v. State*, 338 Md. 406, 659 A.2d 291 (1995), and *Lopez–Sanchez v. State*, 388 Md. 214, 879 A.2d 695 (2005), we regrettably answer "no."

## FACTS AND LEGAL PROCEEDINGS

In October 2000, appellee Jack Kontgias entered an *Alford*[1] plea of guilty to child sexual abuse of appellant Sarah Raymond. The Circuit Court for Baltimore City sentenced Kontgias to three years of incarceration, all of which was suspended in favor of three years of supervised probation. On November 13, 2000, Kontgias filed a motion to reconsider his sentence, but asked that the motion be held in abeyance "until a hearing is requested."

On September 25, 2002, Ms. Raymond and her mother, appellant Anne Lamb, filed a Crime Victim Notification Request, asking to "receive notice about all of the events related to my case and the defendant . . . as required by law," so that Raymond would "have the opportunity to exercise the rights [she is] entitled to as a crime victim." On September 4, 2003, one month before his probation was due to expire, Kontgias requested a hearing on his previously filed motion to reconsider his sentence.

On February 18, 2004, the Circuit Court for Baltimore City held a hearing on Kontgias' motion. Although Raymond and Lamb had registered as crime victim and victim representative, respectively, neither received notice of this hearing date. Consequently, neither was present to address the court.

During the hearing, the State's Attorney opposed any revision, and advised the court that the victims "would strongly

---

1. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

oppose any imposition of probation before judgment in this case." On May 25, 2004, however, the circuit court granted Kontgias' motion. The court struck the guilty finding entered on October 4, 2000, stayed entry of judgment, granted Kontgias probation before judgment, and discharged him from probation.

When Raymond and Lamb learned about this order, they retained counsel[2] and filed a Motion to Vacate Reconsideration and Request for a Hearing. They were joined by the State's Attorney in arguing that revising the judgment against Kontgias without prior notice to Lamb and Raymond violated Maryland law, and in opposing any sentence modification.

Kontgias opposed the motion, arguing *inter alia* that "the State was a party to the error it now complains of," that vacating the revised judgment effectively "would shift the notice requirement to the defendant," and that "[r]eimposing the conviction" would violate his "right not to be placed twice in jeopardy for the same offense." He also moved to "strike the appearance" of Lamb and Raymond on the ground that they were not "parties authorized by law."

On February 17, 2005, without a hearing, the circuit court denied both Kontgias' motion to "strike the appearances" of Lamb and Raymond and the joint motion to vacate the revised judgment. The court ruled that the motion to vacate was untimely because it was filed seven months after the sentence modification, during which time Kontgias' original "probation expired and was completed without violation on October 4, 2003[.]"[3] The court concluded that it no longer had jurisdiction over Kontgias, and therefore did not address the merits of the joint motion for reconsideration.

---

**2.** Appellants are represented by the Maryland Crime Victim's Resource Center, Inc.

**3.** On November 23, 2004, Kontgias petitioned for expungement of his criminal record. The State and appellants oppose the petition for expungement, which has been stayed pending resolution of this appeal.

Lamb and Raymond noted this appeal,[4] raising two questions for our review:

I.  Did the circuit court err in denying appellants' motion to vacate the revised judgment on the ground that it lacked jurisdiction?

II.  Should the revised judgment imposing probation before judgment be vacated and the matter remanded for a new sentence modification hearing, with prior notice to appellants?

## DISCUSSION

### Crime Victim Notification

Article 47 of the Maryland Declaration of Rights guarantees a victim of crime the right, "upon request, and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented ... by law."[5] By filing a crime victim notification request form, victims and their representatives can acquire the "right to attend any proceeding in which the right to appear has been granted to a defendant." Md.Code (2001), § 11–102(a) of the Criminal Procedure Article (CP).

It is the responsibility of the State's Attorney to provide a victim or victim's representative prior notice of a sentencing

---

**4.** The State did not appeal the May 25 revised judgment.

**5.** Article 47 provides in full:

(a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

(b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, **upon request and if practicable, to be notified of,** to attend, and to be heard at a criminal justice proceeding, **as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.**

(c) **Nothing in this Article** permits any civil cause of action for monetary damages for violation of any of its provisions or **authorizes a victim of crime to take any action to stay a criminal justice proceeding.** (Emphasis added.)

modification hearing. Section 11–104, in the Victims and Witnesses Title of the Criminal Procedure Article, provides in pertinent part:

(e)(1) **The prosecuting attorney shall send a victim or victim's representative prior notice of each court proceeding in the case** ... and of the right of the victim or victim's representative to submit a victim impact statement to the court under § 11–402 of this title if:

(i) prior notice is practicable; and

(ii) the victim or victim's representative has filed a notification request form under subsection (d) of this section.

*See also* Md. Rule 4–345(e)(2)("the State's Attorney shall give notice to each victim ... that a motion to modify or reduce a sentence has been filed [and of the] ... the date, time, and location of the hearing").

The sentencing court also bears responsibility for ensuring that the requisite notice has been given:

(f) *Open Court Hearing.* The court may modify, reduce, correct, or vacate a sentence only on the record in open court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard.... **No hearing shall be held on a motion to modify or reduce the sentence until the court determines that the notice requirements in subsection (e)(2) of this Rule have been satisfied.** ...

Md. Rule 4–345(f)(emphasis added).

These procedural rights are designed to protect the substantive right of victims and their representatives to address the sentencing court. *See* CP § 11–403(b). "A victim or victim's representative who has been denied a right provided under this section may file an application for leave to appeal in the manner provided under § 11–103" of the Victims and Witnesses Title. *See* CP § 11–403(e).

CP section 11–103, governing "application for leave to appeal denial of victim's rights," creates an appellate remedy

only for victims of violent crime [6] when a sentence has been rendered in violation of their statutory rights:

> (b) *Right to file for leave to appeal.*—**Although not a party to a criminal proceeding,** a victim of a violent crime for which the defendant is charged may file an application for leave to appeal to the Court of Special Appeals **from an interlocutory or final order that denies or fails to consider a right secured to the victim by ... § 11–403....**
>
> (c) *Stay of other proceedings.*—**The filing of an application for leave to appeal under this section does not stay other proceedings in a criminal case unless all parties consent.** (Emphasis added.)

Appellants Sarah Raymond and Anne Lamb registered as crime victims. But, they allege, neither the State's Attorney nor the circuit court complied with their respective obligations to ensure that appellants received notice of the hearing to reconsider Kontgias' sentence.

## I.

### Jurisdiction

There is no appellate precedent answering the question now before us—whether, when neither the State's Attorney nor the circuit court fulfills the notification duties prescribed by law, a crime victim may challenge a judgment reducing her assailant's sentence on the ground that it was improperly granted. The circuit court concluded that it lost jurisdiction to consider this issue on a motion for reconsideration, because Kontgias' probation expired on October 4, 2003, seven months before the revised judgment vacating Kontgias' conviction, staying entry of judgment, and granting probation before judgment.

We hold that the circuit court had jurisdiction to decide whether appellants had standing to challenge the revised judgment. The revised judgment of May 25 vacated the

---

**6.** Raymond qualifies as the victim of a violent crime. *See* Md.Code (2001), § 11–103(a) of the Criminal Procedure Article (CP).

original conviction and sentence in favor of probation before judgment. Both appellants and the State challenged the revised judgment in their joint motion for reconsideration. As long as the revised judgment remains in effect, appellants have a cognizable complaint that it was entered in violation of their right to prior notice of the sentence modification hearing. "Standing is concerned with whether the parties have the right to bring suit. Subject matter jurisdiction is concerned with whether the court has the power to hear a case." *Md. Waste Coalition, Inc. v. Md. Dep't of Environment,* 84 Md. App. 544, 548, 581 A.2d 60 (1990), *rev'd on other grounds,* 327 Md. 596, 612 A.2d 241 (1992). Whether appellants had standing to challenge the revised judgment on a motion for reconsideration is a separate issue from whether the circuit court had jurisdiction to hear that challenge. *See, e.g., Collins v. Cambridge Md. Hospital, Inc.,* 158 Md. 112, 148 A. 114 (1930) (orphan's court has jurisdiction to determine whether persons challenging a will had standing to caveat). The circuit court erred in ruling that it lacked authority to determine whether appellants and the State could challenge the revised judgment via a motion for reconsideration.

## II.

### Standing To Appeal

Md. Rule 4–345 governs a sentencing court's power to revise an enrolled sentence in a criminal case. It provides:

(a) *Illegal Sentence.* The court may correct an illegal sentence at any time.

(b) *Fraud, Mistake, or Irregularity.* The court has revisory power over a sentence in case of fraud, mistake, or irregularity. . . .

Lamb and Raymond renew their argument that the circuit court's failure to inquire whether notice of the sentence modification hearing had been given makes the revised sentence illegal, and therefore correctable "at any time." *See* Md. Rule 4–345(a). In their view, the rule "creates mandatory, nondiscretionary, conditions precedent to a reconsideration hearing."

Alternatively, they posit, the failure of the State's Attorney and the sentencing court to follow the mandate of Rule 4–345(e) and (f) constitutes an irregularity within the meaning of Rule 4–345(b), affording the court grounds to vacate the revised judgment.

Appellants cite two cases for the proposition that the failure to notify them of the sentence modification hearing makes Kontgias' sentence illegal. In *Mateen v. Saar,* 376 Md. 385, 398–99, 829 A.2d 1007 (2003), the Court of Appeals held that Mateen's sentence was illegally modified without notice or a hearing on the record in open court. The improper procedure used to revise Mateen's sentence resulted in a commitment order and a sentence change report that were "of no legal force or effect." *Id.* at 399, 829 A.2d 1007; *see Scott v. State,* 379 Md. 170, 190, 840 A.2d 715 (2004). Appellants also rely on our decision in *Wilkins v. State,* 162 Md.App. 512, 875 A.2d 231 (2005), *rev'd,* 393 Md. 269, 900 A.2d 765 No. 65, Sept. Term 2005, 2006 WL 1563927 (filed June 9, 2006), arguing that a sentence that should never have been entered qualifies as an illegal sentence, and therefore is correctable under Rule 4–345(a).

In support of a resentencing remedy for violations of Rule 4–345, appellants rely on *Kent v. State,* 287 Md. 389, 395–96, 412 A.2d 1236 (1980), in which the Court of Appeals held resentencing was the appropriate remedy for a sentencing court's violation of the allocution rule permitting a defendant to present evidence in mitigation of punishment. In addition, they point to a Rules Committee note regarding a proposed change in Rule 4–345, as proof that the Court of Appeals intends its notice procedure to be strictly followed.[7]

---

7. The Rules Committee note to Md. Rule 4–345(f) states:

   As proposed, the Rule would prohibit a judge from deciding the merits of a motion to revise a sentence unless and until the judge is satisfied that the requirements of notice to victims have been complied with or that all reasonable means have been taken to satisfy the requirements.

Kontgias counters that the legality of his sentence is not the dispositive issue in this appeal. Instead, he argues, even if we assume *arguendo* that the revised sentence is illegal or irregular due to lack of notice to appellants, nevertheless these aggrieved crime victims do not have standing to appeal because they are not parties to his criminal case and cannot obtain relief from his enrolled sentence. Kontgias contends that the General Assembly and the Court of Appeals have resolved this standing issue against crime victims. We cannot disagree.

■ The dispositive distinction between this case, *Mateen*, *Wilkins*, and *Kent* is that this appeal was not taken by a defendant challenging his sentence based on alleged violations of his rights. Like Kontgias, defendants Mateen, Scott, and Kent indisputably had standing to challenge ***their own sentences*** on the ground that their rights ***as defendants*** were violated. None of these three cases, however, addresses whether a crime victim has standing to appeal a sentence allegedly entered in violation of her constitutional and statutory rights, but not the defendant's.

The Court of Appeals has considered that question. In *Cianos v. State*, 338 Md. 406, 659 A.2d 291 (1995), family members of victims killed in an automobile accident caused by the defendant's criminal negligence were denied the opportunity to testify at the original sentencing hearing, allegedly in violation of their rights under former Md.Code (1973, 1989 Repl.Vol., 1994 Cum.Supp.), section 12–303.1(c) of the Courts and Judicial Proceedings Article (CJP), which is the predecessor to current CP section 11–104(b).[8] This Court denied the crime victims leave to appeal.

---

**8.** Former Md.Code (1973, 1989 Repl.Vol., 1994 Cum.Supp.), section 12–303.1 of the Courts and Judicial Proceedings Article (CJP), provided:

Although not a party to a criminal proceeding, the victim of the violent crime for which the defendant is charged has a right to file an application for leave to appeal to the Court of Special Appeals from an interlocutory or final order that denies or fails to consider a right

The Court of Appeals affirmed our decision. *See id.* at 412, 659 A.2d 291. It held that, although the crime victims may have been "denied their right to address the sentencing court," they had no standing to appeal the resulting sentence, because they were not parties to the criminal case. *See id.* at 410, 659 A.2d 291. Writing for the Court, Judge Karwacki explained:

The only order in this criminal case was the final judgment of conviction and sentence of [the defendant]. Under Md.Code (1973, 1989 Repl.Vol.1994 Cum.Supp.), §§ 12–301 and 12–302 of the Courts and Judicial Proceedings Article, **only a party may appeal from a final judgment** .... **§ 12–303.1 of the Courts and Judicial Proceedings Article expressly acknowledges that a victim is not a party in a criminal proceeding. The petitioner-victims, therefore, cannot appeal the only judgment in this case.**

Furthermore, even if the [crime victims] had applied for leave to appeal prior to the final judgment in this case, such action would not have stayed the criminal proceedings against [the defendant]. **An appeal by a victim is collateral to and may not interrupt a criminal case, and such an appeal cannot result in a reversal of the judgment and a reopening of the case.**

The petitioners do not argue that the language of § 12–303.1 is ambiguous; however, they assert that the absence of a provision expressly precluding a victim from challenging a final criminal judgment implies the right to do so. This reasoning ignores the plain language of §§ 12–301, 12–302, and 12–303.1.

*Id.* at 410–11, 659 A.2d 291 (citations and footnotes omitted; emphasis added).

In construing CJP section 12–303.1, the Court of Appeals emphasized "the legislative history of earlier, unsuccessful attempts by certain members of the Legislature to provide

---

secured to that victim by Article 27 provisions governing victim impact statements.

*See Cianos v. State,* 338 Md. 406, 410, 659 A.2d 291 (1995).

victims of violent crime with an avenue of redress[.]" *Id.* at 411, 659 A.2d 291.

"Provisions invalidating the sentence clearly worried the legislators. A memorandum, evidently prepared by staff of the House Judiciary Committee, stated, '[t]he major practical problem of both bills ... is the possibility of placing the defendant in jeopardy a second time during the sentencing hearing.' ... The memorandum concluded that, 'House Bill 70 would be acceptable, however, if [the] lines [invalidating the sentence] were deleted. **The statute would have no teeth after such a deletion but it would provide the personal input toward which the statute is aimed.'**"

*Id.* (quoting *Lodowski v. State,* 302 Md. 691, 747, 490 A.2d 1228 (1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986))(emphasis added). The *Cianos* Court concluded that these failed efforts "demonstrate[ ] that the Legislature, in enacting § 12–303.1," intended that crime victims would not be able to invalidate sentences on the ground that their right to participate in criminal proceedings had been denied. *See id.* at 411–12, 659 A.2d 291.

Relying on its rationale in *Cianos,* the Court of Appeals recently affirmed that crime victims lack standing to appeal from a criminal judgment. In *Lopez–Sanchez v. State,* 388 Md. 214, 879 A.2d 695 (2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1042, 163 L.Ed.2d 876 (2006), the issue was whether a restitution order in a juvenile delinquency case could be challenged by the permanently paralyzed shooting victim. Although the juvenile court signed the restitution order *ex parte* and without a hearing or notice to the victim, the Court of Appeals concluded that the victim did not have standing to challenge that order. *See id.* at 230, 879 A.2d 695. The Court followed the same reasoning it previously articulated in *Cianos:*

A victim is not a party to a criminal prosecution. *See Cianos v. State,* 338 Md. 406, 410–11, 659 A.2d 291 (1995). The non-party status of crime victims has been a central precept of Maryland criminal jurisprudence ever since pub-

lic prosecution became the sole method of enforcing this State's criminal law. . . .

The State, in a delinquency proceeding, just as **the State, in a criminal proceeding, is the party in the proceeding, represented by the State's Attorney. The victim is not a party to the proceedings and acts only as a witness,** although vested with statutory and constitutional **rights. . . . Because the victim is not a "party," he or she does not enjoy the general right of appeal** found at § 12–301 of the Courts and Judicial Proceedings Article.

*Id.* at 224–26, 879 A.2d 695 (citations omitted and emphasis added).

The *Lopez–Sanchez* Court acknowledged the frustration of crime victims whose rights to notice and to speak have been violated, but explained why they have no effective remedy.

Victims' rights have received considerable attention in recent years, and rightfully so. On both the federal and state levels, legislatures have expressed the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard. These rights, provided by the Maryland Legislature and the Maryland Constitution, are to be followed and respected. **If, however, the prosecutor or the trial court does not follow the law with respect to a victim's rights in a juvenile proceeding, the Legislature has not given to the victim the general right to appeal that decision.**

In the instant case, the victim is not a party to the delinquency proceeding and therefore cannot appeal. The General Assembly considered and rejected legislation that would have conferred such a right on the victims of delinquent acts. Any right of the victim to appeal, or to file an application for leave to appeal, must originate from the General Assembly, not from this Court.

*Id.* at 230, 879 A.2d 695 (citations omitted and emphasis added).

In a concurring opinion joined by Judge Wilner, Judge Harrell detailed the "deeply prejudicial error" committed by the juvenile court, which prevented the victim from presenting evidence as to why the restitution order should include certain medical expenses. *See id.* at 231–32, 251, 879 A.2d 695. In Judge Harrell's view, "the Circuit Court . . . was in clear error in signing the consent order *ex parte*, without notice to the victim, who had properly requested such notice, and then in denying his motion for reconsideration on the ground that he did not have standing to make the motion." *Id.* at 231–32, 879 A.2d 695. Rhetorically questioning why, "as a matter of rationally considered public policy, the General Assembly has . . . made those hard-won rights largely illusory[,]" he concluded "with great reluctance" that,

[a]lthough disciplinary proceedings conceivably may be brought against a judge who wilfully violates clear statutory rights, there seems to be no efficient remedy for a victim, like Mr. Lopez–Sanchez, if a judge, whether in good or bad faith, denies the victim the rights the Legislature has conferred.

*Id.* at 230–31, 879 A.2d 695. We think Judge Harrell eloquently described the appellate dilemma inherent in this situation.

*Cianos* and *Lopez–Sanchez* inexorably compel us to conclude that appellants Raymond and Lamb also lack standing to appeal Kontgias' reduced sentence. Given the substantively identical law and analogous circumstances, we must follow these decisions.

Under the current subtitle governing rights of crime victims in criminal proceedings, separate sections spell out the rights to participate in presentence investigation (CP § 11–402), sentencing or disposition hearings (CP § 11–403), and death penalty proceedings (CP § 11–404). The legislature explicitly provided that any crime victim "who has been denied a right provided under" CP section 11–403, relating to participation in sentencing, may "file an application for leave to appeal in the manner provided under § 11–103 of this title." *See* CP § 11–

403(e), CP § 11–404(c). But the right of appeal created in CP section 11–103 gives victims of violent crime only the limited right to "file an application for leave to appeal[,]" while explicitly directing that they are not parties to the criminal proceeding and that "[t]he filing of an application for leave to appeal . . . does not stay other proceedings in a criminal case unless all parties consent." *See* CP § 11–103; Md. Decl. of Rights, Art. 47(c).

Current CP section 11–103 is substantively identical to its predecessor, former CJP section 12–303.1. The *Cianos* Court construed this language to mean that a criminal judgment may not be appealed by crime victims who were denied their right to speak at an original sentencing hearing. We reach the same result when the crime victim has been denied her right to notice of a sentence modification hearing.

We have searched for, but not found, a legitimate pathway to materially distinguish the *Cianos* decision on the ground that this case involves a sentence modification rather than an original sentencing. Both original sentencing and sentencing modifications are governed by CP section 11–403, which broadly defines a "sentencing hearing" as "a hearing at which the imposition of a sentence . . . or alteration of a sentence . . . is considered[.]" CP § 11–403(a). Moreover, CP section 11–403(b) establishes both the right to speak at a sentencing hearing and the right to notice of that hearing. As recognized in *Lopez–Sanchez,* the two rights are "hand in glove," in that the right to receive notice of a sentencing hearing protects the right to be heard at that hearing.

We have studied whether the Court of Appeals' reasoning in *Cianos* and *Lopez–Sanchez* rested, in part, on the constitutional prohibition against double jeopardy, which might not be applicable in the context of a re-hearing on Kontgias' motion for sentence modification, when Kontgias could never receive a sentence greater than that originally imposed. But the Court's analysis in these cases did not turn on the double jeopardy prohibition.

Although the Court recognized the potential double jeopardy prohibition, it did so only in the context of assessing why the *General Assembly* may have limited the appellate rights of crime victims. The Court of Appeals' decisions rest on statutory interpretation alone, not on double jeopardy:

[The crime victims] assert that the absence of a provision expressly precluding a victim from challenging a final criminal judgment implies the right to do so. This reasoning ignores the plain language of §§ 12–301, 12–302, and 12–303.1. . . . [T]he Legislature, in enacting § 12–303.1, meant what it said and said what it meant.

*Cianos,* 338 Md. at 411, 659 A.2d 291.

The November 1994 addition of a "victim's bill of rights" as Article 47 of the Maryland Declaration of Rights, shortly after the sentencing hearing in *Cianos* took place, does not require a different result. As the *Lopez–Sanchez* Court acknowledged, the holding in *Cianos* stems from the absence of a statute affording crime victims the right to appeal in these circumstances. The rights enumerated in Article 47 do not include a right to appeal. *See Lopez–Sanchez,* 388 Md. at 223–24, 226, 879 A.2d 695; *see also Cianos,* 338 Md. at 413, 659 A.2d 291 (acknowledging ratification of Article 47, without suggesting that it creates standing).

In the eleven years since the *Cianos* decision, the General Assembly has not acted to give crime victims status as parties to criminal prosecutions. Its only legislative action that might "give teeth" to the right of crime victims in the appellate arena was to amend CJP section 12–302(c)(2) to grant the State the right to appeal when a trial judge imposes or modifies a sentence in violation of the Maryland Rules. *See* 2003 Md. Laws, ch. 141 (effective October 1, 2003). As a party to the criminal case, the State could thus protect a victim's right to be notified of a hearing on a defendant's motion to modify a sentence.[9] "The General Assembly is presumed to

---

9. In this case, as we noted, the State did not appeal from the court's modification of Kontgias' sentence. We do not decide whether the

be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Williams v. State*, 292 Md. 201, 210, 438 A.2d 1301 (1981). We assume that the General Assembly knowingly declined to trump the *Cianos* Court's interpretation of CJP section 12–302 and CP sections 11–403 and 11–404.

Finally, we are not persuaded by appellants' argument that *Cianos* is distinguishable on the ground that the sentencing court in that case had discretion to deny the victim an opportunity to testify at the sentencing hearing, whereas the sentencing court here was required to ensure the victim received notice of the modification hearing. The *Cianos* decision rests on the same assumption that we make in this case, *i.e.*, that the sentencing court violated the rights of the crime victims who, as a result, are seeking to vacate the sentence and reopen the criminal case for new sentencing proceedings. Thus, any discretion that the sentencing court may have had in *Cianos* was immaterial to the Court of Appeals' holding that those crime victims lacked standing to appeal.

We see nothing that could reconcile the holding in *Cianos* that crime victims cannot attack an original criminal sentence on the ground that they were not permitted to speak at the initial sentencing hearing, with a holding in this case that a crime victim can attack a reduced criminal sentence on the ground that she was not notified of the sentence modification hearing.[10] Regardless of which right to participate in sentenc-

---

failure of the State's Attorney to notify the crime victims of the sentence modification hearing would have precluded the State's appeal on the basis that the court also failed in its obligations to insure that the victim and her representative were notified.

**10.** Our decision is consistent with case law interpreting similar statutory and constitutional rights in other jurisdictions. *See generally* Douglas E. Beloof, *The Third Wave of Crime Victims' Rights: Standing, Remedy, and Review*, 2005 B.Y.U. L.Rev. 255 (2005)("Present victim rights' laws ... often severely curtail standing, remedy, or review"); *Cooper v. District Court*, 133 P.3d 692, 696 (Alaska Ct.App.2006)("courts from other states are unanimous in holding that a crime victim does not

ing may have been violated, or whether the hearing involved initial sentencing or a proposed modification, "[a]n appeal by a victim is collateral to and may not . . . result in reversal of the judgment and a reopening of the case." *Cianos*, 338 Md. at 411, 659 A.2d 291. Although the holdings in cases such as *Cianos*, *Lopez–Sanchez*, and this one may appear unjust, any available remedy depends on a legislative expansion of the rights of crime victims to appeal, or the State exercising its right to appeal. *See Lopez–Sanchez*, 388 Md. at 230, 251, 879 A.2d 695.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.[11]**

---

have the right to participate as an independent party in a criminal case")(collecting cases).

**11.** Because appellants were denied their constitutional and statutory rights to notice, "they will not be burdened with the payment of court costs in this appeal." *See Cianos*, 338 Md. at 413–14, 659 A.2d 291.