948 A.2d 30

**Sharden Busie HOILE**

v.

**STATE of Maryland.**

**No. 87, Sept. Term, 2007.**

Court of Appeals of Maryland.

May 7, 2008.

Reconsideration Denied June 10, 2008.

Brian L. Zavin, Asst. public Defender (Nancy S. Forster, Public Defender), on brief, for petitioner/cross-respondent.

Sarah Page Pritzaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), Russell P. Butler (Amber L. Bryant, Maryland Crime Victims' Resource Center, Inc.), on brief, for respondent/cross-petitioner.

Argued before BELL, C.J.,*RAKER, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, specially assigned) DALE R. CATHELL, (Retired, specially assigned), JJ.

HARRELL, J.

*Gallia est omnis divisa in partes tres.*[1] The first part of this opinion provides underlying facts of the criminal case and its convoluted procedural path to our door. The second part explains the Court's reasons for denying earlier the defendant's Motion to Strike Appearance of the crime victim's attorney in the appeal. In the third and final part of this opinion, we shall address the merits of the issues for which certiorari was granted.

## I. Facts and Procedural History

On 10 April 1998, Sharden Busie Hoile, Petitioner/Cross–Respondent here, pled guilty in the Circuit Court for Prince George's County to a charge of first degree assault of Ms. Tracy L. Palmer, a former romantic partner. Hoile was sentenced to 15 years in prison, which was suspended in favor of five years of probation. On 18 May 2001, Hoile was found to have violated that probation and therefore was ordered by the trial judge to serve the original 15 year sentence concurrently with a sentence Hoile then was serving for a separate conviction in the Circuit Court for Calvert County.[2] Hoile filed a motion for reconsideration of sentence in the Prince George's County case.

On 10 December 2004, the Circuit Court for Prince George's County held a hearing on Hoile's motion. The motion was granted. As a result, Hoile ostensibly was to be committed to

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

**1.** Julius Caesar, Commentarii de Bello Gallico.

**2.** The Calvert County conviction was for a crime also committed against the same victim, Ms. Palmer.

the Department of Health and Mental Hygiene for substance abuse treatment.[3] The Circuit Court for Prince George's County forwarded a copy of the order imposing the altered sentence to the Circuit Court for Calvert County. The Circuit Court for Calvert County declined, however, to reconsider Hoile's sentence in its case.[4] This result occasioned the Circuit Court for Prince George's County to hold another hearing on 8 April 2005, at Hoile's request, to consider the effect on its 10 December 2004 ruling of the refusal by the Calvert County court to alter its sentence of imprisonment.[5] The Circuit Court for Prince George's County, upon reflection, again modified the sentence in its case, the present one, to time served and placed Hoile on five years of supervised probation.

On 8 December 2005, Ms. Palmer wrote a letter to the trial judge in Hoile's case in Prince George's County stating that

---

3. Pursuant to Maryland Rule 4–345 and Maryland Code (2000, 2005 Repl.Vol.), Health–General Article, § 8–507, later amended by Chapter 338 of the Laws of 2006.

4. As best as we may determine from the record before us, on 16 February 2005, the Circuit Court for Calvert County denied Hoile's companion motion for reconsideration of sentence filed in that Court "on the matter for a drug treatment program." Palmer was notified of Hoile's sentence reconsideration efforts in the Calvert County case. Whether the motion was wholly denied or some aspect of it remains pending in Calvert County, we are unable to determine from this record.

5. In order for Hoile to be committed for substance abuse treatment under the altered sentence rendered by the Circuit Court for Prince George's County, the Circuit Court for Calvert County also was required to grant Hoile's motion for reconsideration in its case. The version of Maryland Code (2000, 2005 Repl.Vol.), Health–General Article, § 8–507(a) in effect at the time of the reconsideration hearing restricted substance abuse treatment to defendants for whom "no sentence of incarceration is currently in effect. . . ." *See Fuller v. State,* 169 Md.App. 303, 309 n. 3, 900 A.2d 311, 314 n. 3 (2006), *aff'd,* 397 Md. 372, 918 A.2d 453 (2007) ("We are persuaded, however, that a petitioner serving multiple terms of confinement would be eligible for commitment to [drug and alcohol treatment] if—*but only if*—all of the sentencing judges order commitment for treatment."). Maryland Code (2000, 2005 Repl.Vol.), Health–General Article, § 8–507(a) since has been amended by Chapter 338 of the Laws of 2006.

she had not been notified [6] of the 10 December 2004 or 8 April 2005 hearings, although she previously requested such notification in writing in a letter dated 2 July 1998 to the Assistant State's Attorney who prosecuted the case.[7] The court held a hearing on 10 February 2006, where Palmer was represented by counsel, and found as a fact that the victim had not been notified properly, as required by Maryland Code (2001, 2007 Cum.Supp.), Criminal Procedure Article,[8] §§ 11–104,[9] 11–503,[10]

---

**6.** The record contains two letters from the Prince George's County State's Attorney's Office announcing the 10 December 2004 and 8 April 2005 reconsideration hearings, both ostensibly sent to Palmer prior to the respective hearings. A 24 November 2004 letter informing Palmer of the December 2004 hearing, however, has the recipient's address blacked out. An 18 March 2005 letter informing of the April 2005 hearing contains no address at all. In addition, the copy of the 18 March 2005 letter in the record appears to be an original document, not a photocopy of a letter. Thus, viewed alone, these documents do not resolve whether Palmer, in fact, was sent the required notices.

**7.** At a 10 February 2006 hearing, the Circuit Court found that Palmer "did everything she could based on the record before me to be notified and was not notified."

**8.** Unless otherwise noted, all statutory references are to Maryland Code (2001, 2007 Cum.Supp.), Criminal Procedure Article.

**9.** Section 11–104 contains the statutory scheme by which a victim may elect to be notified of court proceedings in a criminal case. If a victim has filed a written request form with the prosecuting attorney, the prosecuting attorney is required to "send a victim or victim's representative prior notice of each court proceeding in the case...." § 11–104(e)(1).

**10.** Section 11–503 states:
Notice of Subsequent Proceedings.
(a) In this section, "subsequent proceeding" includes:
(1) a sentence review under § 8–102 of this article;
(2) a hearing on a request to have a sentence modified or vacated under the Maryland Rules;
(3) in a juvenile delinquency proceeding, a review of a commitment order or other disposition under the Maryland Rules;
(4) an appeal to the Court of Special Appeals;
(5) an appeal to the Court of Appeals; and
(6) any other postsentencing court proceeding.
(b) Following conviction or adjudication and sentencing or disposition of a defendant or child respondent, the State's Attorney shall

and Maryland Rule 4–345(e)(2) and (f).[11] On Palmer's motion,

notify the victim or victim's representative of a subsequent proceeding in accordance with § 11–104(e) of this title if:
(1) before the State's Attorney distributes notification request forms under § 11–104(c) of this title, the victim or victim's representative submitted to the State's Attorney a written request to be notified of subsequent proceedings; or
(2) after the State's Attorney distributes notification request forms under § 11–104(c) of this title, the victim or victim's representative submits a notification request form in accordance with § 11–104(d) of this title.
(c) (1) The State's Attorney's office shall:
(i) notify the victim or victim's representative of all appeals to the Court of Special Appeals and the Court of Appeals; and
(ii) send an information copy of the notification to the office of the Attorney General.
(2) After the initial notification to the victim or victim's representative or receipt of a notification request form, as defined in § 11–104 of this title, the office of the Attorney General shall:
(i) notify the victim or victim's representative of each subsequent date pertinent to the appeal, including dates of hearings, postponements, and decisions of the appellate courts; and
(ii) send an information copy of the notification to the State's Attorney's office.
(d) A notice sent under this section shall include the date, the time, the location, and a brief description of the subsequent proceeding.

11. Maryland Rule 4–345 states, in pertinent part:
(e) Modification Upon Motion.
. . . .
(2) Notice to Victims. The State's Attorney shall give notice to each victim and victim's representative who has filed a Crime Victim Notification Request form pursuant to Code, Criminal Procedure Article, § 11–104 or who has submitted a written request to the State's Attorney to be notified of subsequent proceedings as provided under Code, Criminal Procedure Article, § 11–503 that states (A) that a motion to modify or reduce a sentence has been filed; (B) that the motion has been denied without a hearing or the date, time, and location of the hearing; and (C) if a hearing is to be held, that each victim or victim's representative may attend and testify.
(f) Open Court Hearing. The court may modify, reduce, correct, or vacate a sentence only on the record in open court, after hearing from the defendant, the State, and from each victim or victim's representative who requests an opportunity to be heard. The defendant may waive the right to be present at the hearing. No hearing shall be held on a motion to modify or reduce the sentence until the court determines that the notice requirements in subsection (e)(2) of this Rule have been satisfied. If the court grants the motion, the court ordinarily shall prepare and file or dictate into the record a statement setting forth the reasons on which the ruling is based.

the trial court vacated the altered sentence imposed on 8 April 2005.

After the court vacated the reconsideration of sentence, the following exchange took place:

**Assistant State's Attorney:** And may I inquire of the Court procedurally, now that the sentence has been vacated, original sentence stands. Will a new order need to be issued to the Department of Corrections so that regardless of Mr. Hoile's status in his Calvert County case, that he is— he is incarcerated under the sentence in this matter?

**Counsel for Palmer:** A new commitment order will need to be filed Your Honor.

**Court:** The Clerk agrees with you, and I'm sure she will look into that.

In effect, the vacation of Hoile's reconsidered sentence reinstated the immediate prior sentence (the one imposed upon finding a violation of probation), at least until the trial judge were to act anew on the now resurrected motion to reconsider sentence. Before the judge could move on to revisit the merits of Hoile's Motion to Reconsider Sentence at the 10 February 2005 hearing, Hoile asked for a continuance. One was granted.

On 13 February 2006, a new commitment order was filed by the Clerk of the Circuit Court, committing Hoile to the Division of Correction for the remainder of the 15 year sentence.[12]

Hoile filed an immediate appeal to the Court of Special Appeals. In addition, Hoile filed a motion to exclude Palmer's participation, individually or through counsel, as a party to the proceedings in the Court of Special Appeals. The intermediate appellate court originally denied the motion, without preju-

---

12. Specifically, the commitment order stated:

Reconsideration of sentence on 4/08/05 is vacated. Concurrent with Calvert County K-00-147. Probation terminated unsatisfactorily, Parole and Probation may close their interest in this case. Any bench warrants are recalled. All costs, fines and restitution deemed uncollectible.

dice, permitting Hoile to seek the same relief in his reply brief or at oral argument. Counsel for Palmer filed a brief (accepted by the intermediate appellate court) and participated in oral argument in the Court of Special Appeals as if a party. Although Hoile, in his reply brief, renewed his request to strike the appearance of Palmer's counsel, the Court of Special Appeals dismissed the appeal without acting on the motion. The intermediate appellate court, in an unreported opinion, dismissed the appeal as premature because the trial judge in the Circuit Court for Prince George's County had not acted yet on the revived motion to reconsider sentence.[13]

On 5 December 2007, we granted Hoile's Petition for Writ of Certiorari and the State's Cross-petition. The Petition and Cross-petition collectively raise four questions:

1. Did the Court of Special Appeals err by dismissing Petitioner's appeal from an order of the trial court reimposing Petitioner's sentence of incarceration where the trial court previously had granted [Hoile's] motion for reconsideration and modified his sentence to probation but then vacated that sentence at the request of the victim who alleged she had not been notified of the reconsideration hearing?

2. Did the trial court illegally increase [Hoile's] sentence when it vacated his sentence of probation and reimposed a sentence of incarceration?

3. Did the trial court err in granting a motion to vacate judgment where that motion was filed by the victim, a nonparty to the case?

4. Is Hoile precluded from arguing that the trial court illegally increased his sentence?

On 3 January 2008, Hoile filed a Motion to Strike the Appearance of Counsel for Palmer in the proceedings before this Court. Palmer opposed the motion. The State filed a

---

13. The mandate of the Court of Special Appeals, issued on 24 September 2007, lists only the State of Maryland as Appellee. The Certification of Transmission of Record to this Court, however, lists Palmer's attorney, in addition to the Office of the Attorney General for

memorandum of law, the content of which we interpret as urging the Court to "do the right thing" regarding the motion. On 11 March 2008, after hearing oral arguments on the motion only from Hoile and Palmer (the State declined to argue), we issued an Order denying Hoile's motion. In section II of this opinion we explain our reasons for denying the motion. Although an interlocutory ruling, the denial of the motion deserves an explanation because of the relative "sea change" in our jurisprudence it represents regarding the status of a victim's participation in a criminal appeal.

## II. Motion to Strike Appearance of Counsel

In his Motion and supporting Memorandum of Law, Hoile contended that Palmer is not a party and should not be able to participate in the case as a matter of right.[14] Palmer countered that she has a right to brief and argue the issues in the case as if a party, citing, among other supporting reasons, recent changes to Maryland Rule 8–111.[15]

Maryland Rule 8–111 currently states:

DESIGNATION OF PARTIES; REFERENCES

(a) Formal Designation.

(1) No Prior Appellate Decision. When no prior appellate decision has been rendered, the party first appealing the decision of the trial court shall be designated the appellant and the adverse party shall be designated the appellee. Unless the Court orders otherwise, the parties to a subsequently filed appeal shall be designated the cross-appellant and cross-appellee.

---

**14.** Hoile and the State agree that Palmer may participate in the case as an amicus curiae, as opposed to a party.

**15.** Maryland Rule 8–111 is found in Title 8 of the Maryland Rules. Title 8 is titled "Appellate Review in the Court of Appeals and the Court of Special Appeals." Thus, the rights available to a victim under Maryland Rule 8–111 are effective only once a case has reached the threshold of the appellate realm, *i.e.,* an appealable judgment or order has been entered by a trial court.

(2) Prior Appellate Decision. In an appeal to the Court of Appeals from a decision by the Court of Special Appeals or by a circuit court exercising appellate jurisdiction, the party seeking review of the most recent decision shall be designated the petitioner and the adverse party shall be designated the respondent. Except as otherwise specifically provided or necessarily implied, the term "appellant" as used in the rules in this Title shall include a petitioner and the term "appellee" shall include a respondent.

(b) Alternative References. In the interest of clarity, the parties are encouraged to use the designations used in the trial court, the actual names of the parties, or descriptive terms such as "employer," "insured," "seller," "husband," and "wife" in papers filed with the Court and in oral argument.

*(c) Victims and Victims' Representatives. Although not a party to a criminal or juvenile proceeding, a victim of a crime or a delinquent act or a victim's representative may:*

*(1) file an application for leave to appeal to the Court of Special Appeals from an interlocutory or a final order under Code, Criminal Procedure Article, § 11–103 and Rule 8–204; or*

*(2) participate in the same manner as a party regarding the rights of the victim or victim's representative.* [Emphasis added.]

Section (c) was added by a Rules Order of this Court signed on 4 December 2007. The change became effective on 1 January 2008.[16] Thus, this motion presents our first opportunity to construe the new portions of the rule. Palmer contends that Maryland Rule 8–111(c)(2) permits her to participate in this appeal "in the same manner as a party." Under the circumstances of this case, we must agree that Palmer has the right to brief and argue in this appeal.

---

**16.** Hoile conceded at oral argument on the motion to strike that the revised rule applies to the present case.

Because this is our first application of Maryland Rule 8–111(c) since its adoption, some relevant retrospection is required. Article 47 of the Maryland Declaration of Rights, the Victims' Rights Amendment,[17] states:

(a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

(b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

(c) Nothing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding.

Article 47 represents "the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard." *Lopez–Sanchez v. State,* 388 Md. 214, 229, 879 A.2d 695, 704 (2005), *superceded by statute on other grounds by* Chapter 260 of the Acts of 2006. Article 47 and related legislation have created a class of specific, but narrow, rights for victims with regard to certain aspects of the criminal proceedings against the perpetrators of the crimes committed against victims or their property. For example, § 11–104 provides the statutory scheme by which a victim may elect to be notified of the proceedings in the relevant criminal case. Section 11–102 grants victims the right to attend any proceeding in which the right to attend is granted to the defendant. Section 11–302 defines victims' rights to be present at trial. Sections 11–402 and 11–403

---

**17.** Article 47 was ratified by the voters of Maryland on 8 November 1994.

elaborate victims' rights to be heard regarding pre-sentence investigative reports and at sentencing hearings, respectively. Section 11–404 defines victims' rights to address juries in death penalty proceedings. Section 11–503 grants victims the right to be notified of post-conviction appeals and other proceedings.

Section 11–103 provides that a victim may file an action for leave to appeal an interlocutory or final order that "denies or fails to consider" a right granted to him or her by certain statutory provisions. The application for leave to appeal, however, does not stay other proceedings in a criminal case, unless all parties consent.[18] § 11–103(c); Article 47 of the Maryland Declaration of Rights.

█ These rights, however, are limited in application and context. In the present case, for example, Palmer is not a party to the litigation. § 11–103(b); Maryland Rule 8–111(c). There are only two parties, the State of Maryland and Hoile. *See Lopez–Sanchez*, 388 Md. at 226 879 A.2d at 702 ("The victim is not a party to the proceeding . . . although vested with statutory and constitutional rights. . . ."); *Surland v. State*, 392 Md. 17, 23 n. 1, 895 A.2d 1034, 1037 n. 1 (2006). As such, there are some important differences between the rights of parties and those of non-parties enjoying limited rights regarding participation in criminal litigation. Although a victim may "file an application for leave to appeal," he or she does not have a right to appeal as a party does. Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 12–301. A non-party's right to participate in the litigation is limited to "decisions affecting the party's direct

---

**18.** The inability to stay criminal proceedings pending an appeal is a major limitation on victims' rights. *See Cianos v. State*, 338 Md. 406, 411 n. 5, 659 A.2d 291, 294 n. 5 (1995) ("While it is possible for an application for leave to appeal to stay the proceeding if all the parties agree to the stay, we note that the chances of a criminal defendant agreeing to a delay in sentencing, so that his victims may have the opportunity to appeal a perceived denial of victim's rights, are something less than unlikely.").

and substantial interests." *Lopez–Sanchez,* 388 Md. at 227, 879 A.2d at 702.

The limits of victims' rights have been defined further in Maryland caselaw. In *Cianos v. State,* 338 Md. 406, 659 A.2d 291 (1995), we held that victims who erroneously were denied a right to speak at the defendant's sentencing were not entitled to maintain an appeal. In so holding, we noted that the statute enabling victims to speak at sentencing had "no teeth" because victims could not seek invalidation of the sentence. *Cianos,* 338 Md. at 412, 659 A.2d at 294 (quoting *Lodowski v. State,* 302 Md. 691, 747, 490 A.2d 1228, 1256–57 (1985)).

We re-affirmed that proposition in *Lopez–Sanchez,* 388 Md. 214, 879 A.2d 695. In *Lopez–Sanchez,* a victim of a violent crime committed by a juvenile sought to appeal an inadequate restitution amount awarded in the disposition of the juvenile court proceeding. We held that if "the prosecutor or the trial court does not follow the law with respect to a victim's rights in a juvenile proceeding, the Legislature has not given to the victim the general right to appeal that decision." *Lopez–Sanchez,* 388 Md. at 230, 879 A.2d at 704. In response to our holding in *Lopez–Sanchez,* the General Assembly enacted Chapter 260 of the Acts of 2006, which amended § 11–103 to extend victims' rights to file an application for leave to appeal to orders arising from a juvenile proceeding, including disposition hearings under Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 3–8A–19.

After the Legislature amended § 11–103, our Standing Committee on Rules of Practice and Procedure ("Rules Committee") proposed changes ostensibly to conform the relevant rules to the new legislation. The Rules Committee proposed amending Maryland Rule 8–111 to "extend[ ] the right to file an application for leave to appeal to a victim of a [juvenile] delinquent." [19] 158th Report of the Standing Committee on

---

**19.** The Rules Committee also proposed minor amendments to Maryland Rules 1–326 and 8–204 to conform to the 2006 post *Lopez–Sanchez*

Practice and Procedure, 26 September 2007, *available at* http://www.courts.state.md.us/rules/reports/158thReport.pdf. We adopted the proposed rule changes by a Rules Order dated 4 December 2007. The new subsection (c) of Maryland Rule 8–111 became effective on 1 January 2008.

"To interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes." *State ex rel. Lennon v. Strazzella,* 331 Md. 270, 274, 627 A.2d 1055, 1057 (1993). "We thus look to the plain meaning of the language employed in these rules and construe that language without forced or subtle interpretations designed to limit or extend its scope." *Lee v. State,* 332 Md. 654, 658–59, 632 A.2d 1183,1185 (1993).

Subsection (c) of the Rule goes beyond merely ensuring that victims of crimes committed by juveniles are granted the same rights as other crime victims. Subsection (c)(1) alone conforms and carries out the provisions of § 11–103.[20] Section 11–103(b) refers to twelve specific statutory rights granted to victims. If any of those specific statutory rights are violated, the victim may seek leave to appeal.

In the present case, however, subsection (c)(1) of Rule 8–111 is not what concerns us. Instead, subsection (c)(2) is implicated. Subsection (c)(2) of Maryland Rule 8–111 permits a victim to "participate in the same manner as a party regarding the rights of the victim. . . ." This subsection stands as the analog to subsection (c)(1). The two subsections address different contexts: if a victim is aggrieved by an adverse trial court action affecting one or more of the twelve statutory rights

---

changes to § 11–103. The alteration to Maryland Rule 1–326 was merely to include a reference to "Title 8" of the Maryland Rules in the rule permitting counsel to enter appearance on behalf of a victim. The amendments to Maryland Rule 8–204 included inserting language throughout the rule expressly including juvenile court proceedings as a type of proceeding for which an application for leave to appeal may be sought.

**20.** The reference to Maryland Rule 8–204 in subsection (c)(1) creates the time frame in which a victim must file an application for leave to appeal. the State, as one of the attorneys for "Respondents."

referred to in § 11–103(b), subsection (c)(1) applies, and the victim may seek leave to appeal under § 11–103(b); if a victim is content with the implicated trial court action, but a party appeals, the victim may "participate in the same manner as a party" in that appeal, but only with regard to the victim's rights. Victims' rights under subsection (c)(2) extend only as far as, and are subject to, the same limitations as victims' rights under subsection (c)(1) and § 11–103(b).

Our interpretation of subsection (c) of the Rule is supported by the employment in it of the disjunctive connector "or" between (c)(1) and (c)(2). "The word 'or' is a disjunctive conjunction which serves to establish a relationship of contrast or opposition." *Walker v. Lindsey,* 65 Md.App. 402, 407, 500 A.2d 1061, 1064 (1985). Accordingly, subsections (c)(1) and (c)(2) must have been intended to be independent and mutually exclusive provisions applying in the different contexts explicated here.

Our construction of Maryland Rule 8–111(c) in this fashion avoids potentially anomalous results. If the level of appellate participation afforded victims under subsection (c)(2) were less than the level of participation potentially afforded under subsection (c)(1), crime victims would be unable in the former to protect their potentially more meritorious claims. A victim seeking to "participate in the same manner as a party" under subsection (c)(2) in a party's appeal at least has benefitted from a ruling or judgment of the trial court. That ruling, favorable to the victim, could be the subject of an appeal as of right by a party. By contrast, subsection (c)(1) applies where the victim's rights are affected by an unfavorable ruling below and seeks leave to appeal.

As noted above, the amendments to Maryland Rule 8–111 go beyond merely carrying out the changes indicated in Chapter 260 of the Acts of 2006. The addition of subsection (c)(2) has the effect of changing further the landscape of a victim's role in appellate criminal proceedings. In other words, the recent amendments to Maryland Rule 8–111 serve as a distinguishing feature between the present case and Maryland

precedent where Maryland's appellate courts have restricted more narrowly victims' roles in criminal appeals. *See Surland*, 392 Md. at 23 n. 1, 895 A.2d at 1037 n. 1 (holding that a homicide victim's parents did not have standing as victims' representatives to file a brief or participate in oral argument in the Court of Appeals); *Cianos*, 338 Md. at 412, 659 A.2d at 294 (holding that crime victim's relatives lacked standing to appeal sentence); *Lamb v. Kontgias*, 169 Md.App. 466, 479, 901 A.2d 860, 867 (2006) (holding that the victim had no standing to appeal the lack of notice of, and opportunity to speak at, a hearing to reconsider sentence).

This Court previously, by Rule change, altered the landscape of prior caselaw in other areas of the law as well. *See, e.g.*, Committee Note to Maryland Rule 5–607 (noting that the adoption of Maryland Rule 5–607 in 1994 "eliminate[d]" the common-law voucher rule); *Wilson v. Holliday*, 364 Md. 589, 598–601, 774 A.2d 1123, 1128–30 (2001) (describing why, following *Lynch v. Lynch*, 342 Md. 509, 677 A.2d 584 (1996), the Court of Appeals enacted Maryland Rule 15–207(e) governing spousal and child support enforcement through contempt proceedings, abrogating the holding in *Lynch* ); *Greco v. State*, 347 Md. 423, 433 n. 4, 701 A.2d 419, 423 n. 4 (1997) (noting how Maryland Rule 4–345 had been modified to abrogate the holding in *State v. Sayre*, 314 Md. 559, 552 A.2d 553 (1989), regarding mistakes in announcing sentence); *Kang v. State*, 163 Md.App. 22, 44–45, 877 A.2d 173, 185–86 (2005), *aff'd*, 393 Md. 97, 899 A.2d 843 (2006) (noting that the addition of Maryland Rule 4–323(b) limited the effect of "[n]umerous cases of the Court of Appeals" by permitting, for the first time, a continuing objection); *Hoang v. Hewitt Ave. Assocs., LLC*, 177 Md.App. 562, 581, 936 A.2d 915, 926–27 ("Such was the state of Maryland law of pleading and damages when the Court of Appeals decided *Falcinelli v. Cardascia*, 339 Md. 414, 663 A.2d 1256 (1995), and *Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997). Those cases prompted amendments to the Maryland Rules that are important to the issue before us."); *Williams v. State*, 110 Md.App. 1, 23 n. 6, 675 A.2d 1037, 1048 n. 6 (1996) (noting how Maryland Rule 1–502 [since replaced

by Maryland Rule 5–609] altered the admission into evidence convictions of infamous crimes); *Mooney v. State,* 28 Md.App. 408, 415, 346 A.2d 466, 471 (1975) ("The abrogation of the common law right to indictment is clearly shown by the amendments to Rule 709.").

In the present case, Palmer was authorized to participate in briefing and oral argument before this Court on 3 April 2008 on the issues that *directly and substantially* affected her specific statutory rights enumerated in § 11–103(b), as implicated by the parties' certiorari questions. *Lopez–Sanchez,* 388 Md. at 227, 879 A.2d at 702. In the trial court, Palmer successfully filed and argued a motion to vacate reconsideration of Hoile's sentence based on asserted denial of her rights. Palmer now argues that the motion was necessary in order to protect her rights to be notified, attend, and be heard under § § 11–102, 11–104, 11–403 and 11–503. The resolution of the present appeal on the merits will affect Palmer's "direct and substantial interests." *Lopez–Sanchez,* 388 Md. at 227, 879 A.2d at 702. Therefore, she was permitted to participate in a manner similar to a party, including participating in oral argument and filing a brief.[21]

## III. Merits of the Present Appeal

### A. The Granting of the Motion to Vacate Reconsideration of Sentence is an Appealable Judgment

 The Court of Special Appeals dismissed Hoile's appeal as premature, holding that the vacation of Hoile's altered sentence of time served and five years probation was not an appealable final judgment. It is a long-standing principle of our appellate jurisprudence that generally, "an appeal in a criminal case is premature until after final judgment." *Dail v. Price,* 184 Md. 140, 143, 40 A.2d 334, 336 (1944); Maryland Code (1977, 2006 Repl.Vol.), Courts & Judicial Proceedings

---

21. For the purposes of Rule 8–111(c)(2), Palmer, and future persons in a similar procedural posture, shall be designated as "Victim," not as a Petitioner or Respondent.

Article § 12–301. "Because of the difficulty in determining whether an issue before an appellate court arises from a final judgment, this Court has formulated a definition: The judgment must be so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding...." *Sigma Reproductive Health Ctr. v. State,* 297 Md. 660, 665, 467 A.2d 483, 485 (1983) (internal quotation omitted). In a basic sense, "a final judgment consists of a verdict [in a criminal case] and either the pronouncement of sentence or the suspension of its imposition or execution." *Lewis v. State,* 289 Md. 1, 4, 421 A.2d 974 (1980). "Usually, a criminal case is complete and disposed of when sentence has been pronounced and, generally, sentence is the punishment to be inflicted on the convicted person in the form of imprisonment or fine or both." *Langworthy v. State,* 284 Md. 588, 596–97, 399 A.2d 578, 583 (1979) (footnote and citation omitted), *superseded by statute on other grounds as stated in Treece v. State,* 313 Md. 665, 547 A.2d 1054 (1988). "When sentence is pronounced or imposed, there is a final judgment for purposes of appeal." *State v. Sayre,* 314 Md. 559, 565, 552 A.2d 553, 556 (1989), *superceded by Rule change on other grounds as stated in Greco v. State,* 347 Md. 423, 433 n. 4, 701 A.2d 419, 423 n. 4 (1997).

 The State contends that because "a new sentence has not yet been imposed, there is no final judgment and no appealable order." The State, in this argument, takes a narrow view of what constitutes a sentence "imposed" by a court. The State urges that the original sentence of 15 years incarceration was not reimposed on Hoile, rather, it simply was "resurrected," "revived," "sprung back," or "reverted" by virtue of the court's vacation of the altered sentence of time served and five years' probation. The State's argument ignores the procedure required to "revive" Hoile's original sentence and our caselaw which takes a broader view of what constitutes the imposition of sentence.

In *McDonald v. State*, 314 Md. 271, 550 A.2d 696 (1988), we rejected the argument that an original sentence was "revived" when reimposed on a defendant. McDonald was convicted of solicitation and was sentenced to a six-month suspended sentence with supervised probation for one year. Later, the trial court found that McDonald violated her probation and reimposed the six-month sentence. The trial court denied McDonald's Rule 4–345 motion for reconsideration of sentence because more than 90 days elapsed since the original imposition of sentence. We held that the reinstating of a suspended sentence following the parole violation constituted an imposition of sentence. We noted that "[w]hether the hearing judge reimposes the original sentence or imposes a new sentence, the effect under Rule 4–345[ ] remains the same...." *McDonald*, 314 Md. at 285, 550 A.2d at 702. We expressly adopted the reasoning of the Court of Special Appeals in *Coley v. State*, 74 Md.App. 151, 156, 536 A.2d 1166, 1169 (1988), where the intermediate appellate court stated that "if an order revoking a defendant's probation returns the hearing judge to the original sentencing status, then any sentence so imposed must have the effect of an original sentence." The Court of Appeals concluded that "[t]he 90–day period runs from the time *any* sentence is imposed or reimposed upon revocation of probation...." *McDonald*, 314 Md. at 285, 550 A.2d at 702.

In *Greco*, 347 Md. 423, 701 A.2d 419, we addressed whether a reduction in sentence as a result of a defendant's motion for reconsideration was an "imposition of sentence." Greco was convicted in 1984 of first degree murder and first degree rape. *Greco*, 347 Md. at 426, 701 A.2d at 420. He was sentenced to consecutive terms of life imprisonment. *Id.* The defendant filed a motion for reconsideration of sentence, which was held *sub curia* by the trial court until 1992. *Id.* In 1992, the trial court modified Greco's sentence to concurrent life terms of imprisonment. *Id.* Shortly thereafter, Greco filed another motion for reconsideration of sentence under Maryland Rule 4–345. *Id.* The trial court ruled that it was divested of jurisdiction to hear Greco's new motion for reconsideration of sentence because more than 90 days had passed since the

original imposition of sentence in 1984. *Id.* The Court of Appeals held that, by reducing Greco's sentence in 1992, the trial court had imposed a new sentence, thus resetting the 90–day clock. *Greco,* 347 Md. at 432 701 A.2d at 423. Therefore, we also held that Greco was entitled to be heard on his new motion for reconsideration of sentence. *Id. Greco* stands for the proposition that the *granting* of a motion for modification of sentence constitutes the imposition of a new sentence. *Accord State v. Green,* 367 Md. 61, 83–84, 785 A.2d 1275, 1288 (2001) ("[O]ur cases make clear that when a trial court grants a motion to revise a criminal sentence, it resurrects the penalty portion of a judgment, thus, the new sentence represents the actual disposition of the case and the modified sentence becomes the appealable order."). The State offers no persuasive argument as to why the *vacation* of the grant of an identical motion does not also constitute an imposition of a new sentence. *See Green,* 367 Md. at 83–84, 785 A.2d at 1288 (rejecting an argument described as "exceedingly technical" and holding that when a trial court revises sentence "the new sentence represents the actual disposition of the case and the modified sentence becomes the appealable order"); *Webster,* 359 Md. at 477, 754 A.2d at 1010 (finding an appealable judgment where "the collateral motion . . . was granted, and resulted in the imposition of a new sentence").

The State's reasoning, were it to be adopted, could lead to potentially anomalous results. If the State had opposed Hoile's initially successful motion for reconsideration of sentence on the grounds that it was a violation of either the Maryland Code or the Maryland Rules, the State clearly would have the right to appeal. Maryland Code (1974, 2006 Repl.Vol.), Courts & Judicial Proceedings Article, § 12–302(c)(2); *Green,* 367 Md. at 84, 785 A.2d at 1288 (2001); *Webster,* 359 Md. at 477, 754 A.2d at 1010. The State, instead, offered no opposition to Hoile's motion and allowed its time for appeal from the grant thereof to expire. The State then supported Palmer's motion to vacate reconsideration of sentence after the time expired for the State's appeal from the decision on the motion. *See State v. Wilkins,* 393 Md. 269,

273, 900 A.2d 765, 768 (2006) ("In other words, a motion to correct an illegal sentence is not an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of judgment and sentence in a criminal case."). In essence, the State joined in a motion seeking to reverse a decision of the Circuit Court for which the State's time to appeal had expired.

 Hoile also points out that if the Circuit Court were to deny his resurrected pending motion for modification of sentence, he would have no opportunity to appeal. The State's brief is conspicuously silent in response to this argument. There is much caselaw holding that the denial of a motion to modify a sentence, unless tainted by illegality, fraud, or duress, is not appealable. *See, e.g., Costello v. State,* 237 Md. 464, 469–70, 206 A.2d 812, 815 (1965) (holding that where the defendant alleged a violation of the "constitutional right to due process of law," the defendant would be permitted to appeal a denial of a motion to modify sentence as an "exception to the general principle"); *State v. Rodriguez,* 125 Md.App. 428, 442, 725 A.2d 635, 642 (1999) ("As a general rule, '[a] motion to modify or reduce a sentence is directed to the sound discretion of the trial court and is not appealable.'" (quoting *State v. Strickland,* 42 Md.App. 357, 359, 400 A.2d 451, 452 (1979))). This clear principle, however, might be seen as called into question recently by dicta [22] in *Fuller v. State,* 397 Md. 372,

---

**22.** The analysis in *Fuller II* of the right to appeal a court's discretionary denial of motion to reconsider sentence is entirely dicta. The issue in *Fuller II* was whether a defendant who moved to be committed to drug and alcohol treatment and was denied such relief could appeal the court's order. Fuller attempted to analogize his efforts to be committed to treatment to a variety of other motions, including motions for modification of sentence under Maryland Rules 4–345(a) (illegal sentence) and 4–345(e) (modification in the discretion of the court). *Fuller II,* 397 Md. at 387, 918 A.2d at 462. The Court in *Fuller II* ultimately concluded that "[t]he denial of a Section 8–507 [of the Health–General Article] petition for commitment, however, is not analogous to the denial of a motion for modification. Unlike a motion for modification, a petition for commitment does not affect the length of a sentence, only where a portion of it is to be served." *Fuller II,* 397 Md. at 389, 918 A.2d at 463. Thus, the dicta in *Fuller II* was only included for purpose

918 A.2d 453 (2007) (*Fuller II* ). For the purpose of clarity, we explain that a denial of Hoile's pending motion for modification of sentence would have been unappealable.[23]

The proper perspective from which to analyze *Fuller II* begins with the Court of Special Appeals's opinion in that case, *Fuller v. State,* 169 Md.App. 303, 900 A.2d 311 (2006) (*Fuller I*). The Court of Special Appeals in *Fuller I* surveyed prior reported cases and noted its synthesized "conclusion that this Court does not have jurisdiction to review the ruling at issue is entirely consistent with the well settled rule (never modified by the General Assembly) that, unless the circuit court erroneously concludes that it does not have jurisdiction to consider the defendant's motion for modification, no direct appeal lies from the circuit court's denial of a motion for modification or reduction of a sentence that the defendant concedes to be a *legal* sentence." *Fuller I,* 169 Md.App. at 309–310, 900 A.2d at 315 (footnotes omitted). We affirmed the judgment of the Court of Special Appeals, but our reasoning on this issue appeared to differ. In support of its assertion that no appeal lies from the refusal to modify a legal sentence, except where it declines to exercise jurisdiction, the Court of Special Appeals relied on *Costello. Fuller I,* 169 Md.App. at 310 n. 6, 900 A.2d at 315 n. 6. We, however, disagreed with that reliance, noting that "[w]e disagree with the State's rationale relying upon *Costello* . . . that a decision left to the discretion of the trial court judge is not reviewable on appeal, because that justification was obviated in *Merritt [v. State],* 367 Md.

---

of comparison and was of little actual value in determining the ultimate outcome in that case.

**23.** Although the following discussion itself may seem like unnecessary dicta, it is, in fact, integral to the outcome of the present case. A non-party to his case, Palmer, filed and prosecuted a successful motion to vacate after the time for the State's opportunity for appeal expired, resulting in a dramatic increase in Hoile's previously prevailing sentence. It would be contrary to the interests of justice to preclude Hoile from appellate review entirely under these circumstances. It would be unfair to hold that Hoile must wait for the trial court to rule on his pending motion for modification of sentence, only to have denial of that motion be unappealable.

17, 785 A.2d 756, in which we examined the appealability of the denial of a motion for a new trial." *Fuller II,* 397 Md. at 388, 918 A.2d at 462. Then, quoting contrasting dicta in *Greco,* 347 Md. at 423, 701 A.2d at 419, the Court in *Fuller II* stated that " '[i]f the motion is denied, the defendant is *finished*-he or she may not file another motion for reconsideration.' " *Fuller II,* 397 Md. at 389, 918 A.2d at 463 (quoting *Greco,* 347 Md. at 423, 701 A.2d at 419). This undeveloped dicta could be read to call into question the clearly articulated earlier rule prohibiting appeal of a discretionary denial of a timely motion for modification of sentence under Maryland Rule 4–345(e) and its predecessors.

The language in *Fuller II,* as construed here, should not be read as retreating from the Court's earlier expressed views on this point. In discussing the appealability of the denial of a motion to correct an illegal sentence under Maryland Rule 4–345(a), Judge Eldridge fairly described earlier Maryland jurisprudence on the issue as a "plethora of inconsistent opinions," a "saga," and "zigzagging." *State v. Kanaras,* 357 Md. 170, 180, 742 A.2d 508, 514 (1999). *Kanaras,* in overruling at least five prior reported cases and affirming several others, brought needed clarity by holding that the denial of a motion to correct an illegal sentence is appealable. *Kanaras* is just as notable for what it did not overrule as what it did. *Kanaras,* expressly overruled *Valentine v. State,* 305 Md. 108, 501 A.2d 847 (1985); *Harris v. State,* 241 Md. 596, 217 A.2d 307 (1966); *Burley v. State,* 239 Md. 342, 211 A.2d 714 (1965); *Wilson v. State,* 227 Md. 99, 175 A.2d 775 (1961); and *Brady v. State,* 222 Md. 442, 160 A.2d 912 (1960). *Kanaras,* however, did not overrule *Costello,* though discussing it extensively. The Court's opinion in *Fuller II* correctly recognized *Kanaras* as "reconciling" *Costello* while overruling *Wilson,* the case upon which *Costello* relies largely. *Fuller II,* 397 Md. at 384, 918 A.2d at 460. The holding of *Costello* has not been challenged, either by *Fuller, Kanaras,* or any other case. Thus, the distinction between motions to correct a sentence based upon an error of law and motions to reconsider sentence that are entirely committed to a court's discretion remains good law.

Therefore, a denial of Hoile's pending motion for modification of sentence would not be appealable.[24]

Finally, the State's argument fails as a practical matter. As a result of the 5 April 2005 hearing, Hoile was under a sentence of five years of probation. Following the 10 February 2006 hearing, the Circuit Court signed a new commitment order, committing Hoile to the Division of Correction for the remainder of a 15 year period of incarceration. The filing of a new commitment order is not a mere formality.

In *Sayre,* 314 Md. at 565, 552 A.2d at 556, *superceded by Rule change on other grounds as stated in Greco,* 347 Md. at 433 n. 4, 701 A.2d at 423 n. 4, the question considered was when was a sentence deemed to be imposed on a defendant following a conviction. The Court of Appeals held that the sentence was imposed when it was announced from the bench and the trial court "indicates that the particular case before it is terminated," even if the trial judge suffered a "slip of the tongue" and announced the wrong sentence. *Sayre,* 314 Md. at 565, 552 A.2d at 556. No commitment order or transfer of the defendant to the executive branch was necessary for the sentence to be deemed imposed. The new commitment order in the present case provides far greater indicia of finality than that of an oral indication from the bench that the proceedings before the court are closed. In fact, the dissent in *Sayre* argued that the Court should have held that a sentence was imposed when the commitment order was filed. *See Sayre,* 314 Md. at 568, 552 A.2d at 557 (Rodowsky, J., dissenting) (" 'The oral utterance is an act of judgment, but it is not an entirely unalterable one. Other events, as for example entry of the order of commitment, are required to give it absolute finality.' " (quoting *Rowley v. Welch,* 114 F.2d 499, 503 (D.C.Cir.1940))). The Majority in *Sayre* rejected that argu-

---

**24.** Hoile's motion in the present case is one that is addressed to the trial court's discretion. Hoile alleges no error of law that might infect the sentence imposed on violation of probation. The support for his motion consists of his enrollment in Narcotics Anonymous, good behavior while in prison, securing a position as a maintenance worker, and obtaining his G.E.D.

ment, holding instead that finality attached to the judgment *prior* to the filing of a new commitment order.

The new order in the present case altered the sentence that Hoile was then serving. *See Webster*, 359 Md. at 477, 754 A.2d at 1010 (agreeing with the State in that case that the sentence modification at issue was an appealable judgment because "the action of the trial court served to alter the sentence previously imposed upon the petitioner"); *Abeokuto v. State*, 391 Md. 289, 351, 893 A.2d 1018, 1054 (2006) ("In the present case, the trial court initially imposed the sentence for extortion to begin on 24 December 2002 and then purported in subsequent papers to change it to consecutive with the death sentence, which effected an increase (albeit potentially a metaphysical one) in the sentence. This was not permitted."). The new sentence represents a sentence imposed on Hoile, and as such, is appealable.

We also conclude that the new sentence imposed in February 2006 amounted to an increase in sentence over the sentence imposed in April 2005. This requires little explanation. Prior to 10 February 2006, Hoile was sentenced to probation. Currently, Hoile stands sentenced to the remainder of 15 years in prison.

### B. The Trial Court Impermissibly Increased Hoile's Sentence

Having determined that the 10 February 2006 hearing resulted in an increased sentence imposed on Hoile, we must determine whether the increase in that sentence was legal. Hoile presents three arguments for why it was not. First, Hoile contends that the factual findings made by the Circuit Court are insufficient to find that the sentence imposed at the April 2005 hearing violated Maryland Rule 4–345(e) and (f) and thus, was not an "illegal" sentence. Hoile, curiously, first argues that the facts as found by the Circuit Court are not sufficient to hold that the April 2005 proceeding violated Rule 4–345(e) and (f). Because we do not address the argument here, it is not necessary to recount it in detail. Essentially, Hoile contends that because the Circuit Court failed to make a

specific finding that the State failed to take adequate steps to notify Palmer of the proceeding, the Circuit Court could not deem the April 2005 sentence illegal. If we were to address this argument and agree with Hoile, we likely would remand the case to the Circuit Court for such a factual determination. Instead, we hold that the Circuit Court illegally increased Hoile's sentence by granting the motion to vacate sentence, and shall reverse ultimately the Circuit Court. Second, Hoile contends that even if the Circuit Court failed to comply with Maryland Rule 4–345(e) and (f), the failure to notify the victim does not render the sentence of five years probation "illegal." Finally, he contends in his reply brief that a court may not increase a defendant's sentence unless the original sentence is illegal.

Here, the Victim and the State part ways with their responsive arguments. The State concedes that the "modified sentence was not 'illegal'. . . ." Instead, the State contends that the failure to notify the Victim of the proceedings constitutes an "irregularity," over which the Circuit Court retains revisory power under Maryland Rule 4–345(b). By contrast, Ms. Palmer maintains that the sentence imposed at the April 2005 hearing was "illegal" and may be corrected by the Circuit Court pursuant to Maryland Rule 4–345(a).

### 1. Illegal Sentence

Maryland Rule 4–345(a) states that a "court may correct an illegal sentence at any time." The correction of an illegal sentence may result in an increase over the erroneous sentence previously imposed on the defendant. *State v. Griswold,* 374 Md. 184, 821 A.2d 430 (2003) (holding that the trial court illegally reduced convictions on motion for reconsideration and reinstating convictions which effectively increased sentence); *State v. Hannah,* 307 Md. 390, 403, 514 A.2d 16, 22 (1986) (vacating, on the State's appeal, the sentence of probation before judgment and ordering trial court to impose mandatory minimum of five years in prison); *State ex rel. Sonner v. Shearin,* 272 Md. 502, 526, 325 A.2d 573, 586 (1974) ("Upon the remand the trial judge shall delete the improper

suspension of sentence so that the handgun violation will be for the mandatory term of five years."); *Mateen v. Galley,* 146 Md.App. 623, 649, 807 A.2d 708, 723 (2002) (holding that an illegal sentence "may be corrected by the imposition of a legal sentence, even though the corrected sentence is longer than the original illegal sentence"), *reversed on other grounds, Mateen v. Saar,* 376 Md. 385, 829 A.2d 1007 (2003).

 An illegal sentence is a sentence "not permitted by law." *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985). An illegal sentence properly is corrected only "where there is some illegality in the sentence itself or where no sentence should have been imposed." *Evans v. State,* 382 Md. 248, 278, 855 A.2d 291, 309 (2004). Language in *Evans* stating that a sentence is illegal "where no sentence should have been imposed" is inapplicable to the context of the present case. The language in *Evans* does not make a sentence illegal merely because a required procedure was not followed prior to the court imposing the sentence. *Evans* cites three cases for the premise that a sentence is illegal if it is imposed "where no sentence should have been imposed." In all three cases, no sentence should have been imposed at *any* proceeding in the case. *See Ridgeway v. State,* 369 Md. 165, 171, 797 A.2d 1287, 1290 (2002) (no sentence should have been imposed on the defendant for certain assault charges because the defendant was acquitted of those charges); *Holmes v. State,* 362 Md. 190, 195–96, 763 A.2d 737, 740 (2000) (sentence of probation with home detention as a condition of probation was illegal because the trial court lacked statutory authority to impose such a condition); *Moosavi v. State,* 355 Md. 651, 662, 736 A.2d 285, 291 (1999) (sentence was illegal because the defendant was convicted under an inapplicable statute). By contrast, the State and Palmer do not contend that the Circuit Court would be without authority to impose a sentence of probation at a hearing which fully complied with the requirements of Maryland Rule 4–345(e) and (f). Instead, they argue that the particular proceeding at which the sentence of probation was

imposed on Hoile was deficient. Thus, the rule as stated in *Evans* is of no help to the State or Palmer.

■ A sentence is not illegal where the illegality "did not inhere in [the defendant's] sentence." *Id.* (quoting *Kanaras,* 357 Md. at 185, 742 A.2d at 517).

"The notion of an 'illegal sentence' within the contemplation of the *Walczak* decision deals with substantive law, not procedural law. It has obvious reference to a sentence which is beyond the statutorily granted power of the judge to impose. It does not remotely suggest that a sentence, proper on its face, becomes an 'illegal sentence' because of some arguable procedural flaw in the sentencing procedure."

*Wilkins,* 393 Md. at 273, 900 A.2d at 768 (quoting *Corcoran v. State,* 67 Md.App. 252, 255 507 A.2d 200, 202 (1986)).

Although "there are significant differences between the current Maryland rule [4–345] and its federal counterpart [35(b) ]," *Greco,* 347 Md. at 434, 701 A.2d at 424, we have found federal precedent helpful in applying some aspects of the rule. In *Wilkins,* 393 Md. at 275, 900 A.2d at 769, and *Randall Book Corp. v. State,* 316 Md. 315, 321–22, 558 A.2d 715, 719 (1989), we discussed approvingly the Supreme Court's decision in *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), in our analysis of what constitutes an illegal sentence. In *Hill,* the trial judge did not afford the defendant an opportunity to allocute prior to sentencing, in violation of the Federal Rules. On a later appeal, the defendant argued that the sentence imposed by the trial court was an illegal sentence. The Supreme Court disagreed, stating:

But, as the Rule's language and history make clear, the narrow function of Rule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence. The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed

for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect.

*Hill,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417.

As noted above, *Hill* has been discussed with approval in several reported Maryland appellate decisions. Although both are given rights at a sentencing proceeding, the law currently recognizes that a criminal defendant has a greater cognizable interest in the sentencing proceeding than does the victim of the crime.[25] If it is not an illegal sentence where the criminal defendant is sentenced and not afforded the required opportunity to speak on his own behalf, it is less able to be maintained that an illegal sentence results where the victim is denied the opportunity to speak.

Palmer and the State do not allege that the sentence of probation imposed at the April 2005 hearing exceeded any statutorily prescribed limits or violated any substantive criminal law. The sentence is not illegal on its face, and accordingly, the sentence is not illegal.

## 2. Irregularity

The State argues that, although the April 2005 sentence is not illegal, the proceeding was marred by an "irregularity." The State correctly points out that the "court has revisory power over a sentence in case of fraud, mistake, or irregularity." Maryland Rule 4–345(b). The State's argument, however, suffers from a fundamental flaw. At least on

---

**25.** A criminal defendant may appeal as a matter of right from a final judgment, but a victim must seek "leave to appeal." Maryland Rule 8–111(c); § 11–103. In addition, a criminal defendant is a party to the criminal case. The victim is not. Maryland Rule 8–111(c); § 11–103. As a party to the case, the criminal defendant has a greater interest in the outcome of the proceeding. This should not be understood, however, to mean that either the courts or the law are unmindful of the natural human feelings of a victim of a crime, and society in general, in hoping and expecting that justice is done, deterrence furthered, retribution meted out, and society protected from the defendant's further criminal deeds were he or she not restrained by incarceration or other restraint.

the facts in the present case,[26] a court may not increase a sentence under Maryland Rule 4–345(b).

"In the context of judgments, it is well settled that an 'irregularity' is 'the doing or not doing of that, in the conduct of a suit at law, which, conformable to the practice of the court, ought or ought not to be done.' " *Gantt v. State,* 99 Md.App. 100, 104, 635 A.2d 97, 99 (1994) (quoting *Autobahn Motors, Inc. v. Mayor & City Council of Balt.,* 321 Md. 558, 562, 583 A.2d 731, 733 (1991)). "[I]rregularity, in the contemplation of the Rule, usually means irregularity of process or procedure ... and not an error, which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged." *Autobahn Motors,* 321 Md. 558, 562–63, 583 A.2d 731, 733 (citing *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291, 293 (1975)). We assume, for the sake of argument, that the failure of the State to notify Palmer (as found by the trial judge) and the failure of the trial court to inquire into notification in the first instance, constitutes an "irregularity" within the meaning of Rule 4–345(b).

As we noted earlier, "[t]o interpret rules of procedure, we use the same canons and principles of construction used to interpret statutes." *Strazzella,* 331 Md. at 274, 627 A.2d at 1057. "We thus look to the plain meaning of the language employed in these rules and construe that language without forced or subtle interpretations designed to limit or extend its scope." *Lee,* 332 Md. at 658–59, 632 A.2d at 1185. "Generally, it is only when the words of the rule are ambiguous that we must look toward other sources to glean the intent of the rule." *In re Victor B.,* 336 Md. 85, 94, 646 A.2d 1012, 1016 (1994).

---

**26.** We reserve for future consideration the issue of whether a court properly may increase a defendant's sentence under Maryland Rule 4–345(b) where the defendant is to blame for the fraud, mistake, or irregularity. Maryland Rules 4–345(e) and (f) do not obligate the defendant to ensure that the notice provisions of the rule are followed. That obligation falls on the trial court and the State.

Maryland Rule 4–345(b) states that "[t]he court has revisory power over a sentence in case of fraud, mistake, or irregularity." While the statement of the Rule seems simple enough, there is ambiguity in determining the scope of the court's "revisory power" under this subsection. Maryland Rule 4–345(a), which permits a court to increase a sentence to correct an illegal sentence, does not use the term "revisory power," utilizing instead the term "correct." By contrast, Maryland Rule 4–345(e) uses the term "revisory power," but lists the prohibition on increasing a sentence as an exception to that "revisory power." Thus, we turn to the "legislative history" of the Rule to determine the remedial scope of the "revisory power" in Maryland Rule 4–345(b).

Prior to 11 May 2004, Maryland Rule 4–345(b) stated:

Modification or Reduction—Time For. The court has revisory power and control over a sentence upon a motion filed within 90 days after its imposition (1) in the District Court, if an appeal has not been perfected, and (2) in a circuit court, whether or not an appeal has been filed. Thereafter, the court has revisory power and control over the sentence in case of fraud, mistake, or irregularity, or as provided in section (e) [desertion and nonsupport cases] of this Rule. The court may not increase a sentence after the sentence has been imposed, except that it may correct an evident mistake in the announcement of a sentence if the correction is made on the record before the defendant leaves the courtroom following the sentencing proceeding.

For the purposes relevant to our discussion here, current 4–345(b) and 4–345(e) were combined into one section. The Rule prior to 11 May 2004 made clear that a trial court could not increase a defendant's sentence unless the increase was to correct a "mistake in the announcement of sentence" before the defendant exited the courtroom. The Rules Committee Letter Report [27] and Reporter's Note accompanying the pro-

---

**27.** The Letter Report "caution[ed] that the Reporter's Note was prepared initially for the benefit of the Rules Committee; it is not part of the Rule and has not been debated or approved by the Committee; and

posed rule change discussed the rationale of several of the proposed changes to Maryland Rule 4–345. Standing Committee on Rules of Practice and Procedure, Letter Report, Rule 4–345, 17 February 2004 *available at* http://www.courts.state.md.us/rules/reports/courtletter-revisorypower.pdf. The removal of the prohibition of a court increasing a sentence was not among the changes discussed. *Id.* The Reporter's Note concluded, "Other changes . . . are stylistic only." *Id.* Thus, it is clear that the penultimate drafters of the new Rule did not intend to eliminate the prohibition on increasing a sentence because of fraud, mistake, or irregularity.

The distinction between Maryland Rule 4–345(a), under which a court may increase a sentence, and (b), under which a court may not, is highlighted by *Ridgeway v. State*, 369 Md. 165, 797 A.2d 1287 (2002), a case decided before the 2004 amendments to Maryland Rule 4–345. The Court of Appeals framed the issue in *Ridgeway* as "[t]he dispute in this case, and the decisional issue before this Court, is whether the trial judge's correction of the petitioner's sentence was pursuant to subsection (a) or [then] subsection (b) of Rule 4–345." *Ridgeway*, 369 Md. at 170, 797 A.2d at 1289. The Court noted that the distinction between the two subsections was important because "an illegal sentence may be corrected at any time, while correcting a mistake in a sentencing order that results in an increased sentence may only occur before the defendant leaves the courtroom following the sentencing proceedings." *Ridgeway*, 369 Md. at 170, 797 A.2d at 1290 (internal quotation omitted).

Our conclusion is also supported by Judge Wilner's analysis of the Rule in his concurrence, in *Lopez–Sanchez*. Judge Wilner noted that

[e]xcept when sentence review is sought by the defendant under [Criminal Procedure Article] §§ 8–101 through 8–109,

---

it is not to be regarded as any kind of official comment or interpretation." Nonetheless, the Reporter's Note is helpful in assessing if the drafters of the new rule proposed a major policy shift such as the one urged by the State here.

or an appeal is taken by the State under [Courts & Judicial Proceedings Article] § 12–302 to correct the failure of a court to impose a sentence mandated by law, the sentence may not be increased after it is imposed. *The revisory power of the court extends only to modifications that are clarifying in nature or that do not adversely affect the defendant.* (Emphasis added).

*Lopez–Sanchez,* 388 Md. at 248, 879 A.2d at 715 (Wilner, J., concurring).

### 3. Limitations of Victims' Rights

■■■ Palmer argues that, were our judgment to direct reversal of the Circuit Court, the effect would be to deny her any possible remedy for a clear violation of her right to be notified of, and be heard at, the sentencing proceeding. She largely is correct. Many victims' rights seem effective only when exercised prior to sentencing and entering of a final judgment against or in favor of the defendant. Such a limitation is implied in Article 47's express prohibition on a court permitting a victim to "stay a criminal justice proceeding." *See also* § 11–103(c). If a victim is not authorized to take an action to stay the entering of a judgment in a criminal case, the victim similarly is powerless to have that judgment reopened or vacated. It would be somewhat anomalous if the victim had the power to have a judgment vacated (essentially, undone) where the victim did not have the power to stay the entering of that same judgment.

■■■ In *Lodowski v. State,* 302 Md. 691, 747, 490 A.2d 1228, 1256–57 (1985), *vacated on other grounds,* 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), and again in *Cianos,* 338 Md. at 411–12, 659 A.2d at 294, we briefly discussed the legislative history of a proposal to permit a victim to seek invalidation of a defendant's sentence based on a violation of the victim's rights.

"Provisions invalidating the sentence clearly worried the legislators. A memorandum, evidently prepared by staff of the House Judiciary Committee, stated, '[t]he major prac-

tical problem of both bills ... is the possibility of placing the defendant in jeopardy a second time during the sentencing hearing.' ... The memorandum concluded that, 'House Bill 70 would be acceptable, however, if [the] lines [invalidating the sentence] were deleted. The statute would have no teeth after such a deletion but it would provide the personal input toward which the statute is aimed.' "

*Cianos,* 338 Md. at 411–12, 659 A.2d at 294 (quoting *Lodowski,* 302 Md. at 747, 490 A.2d at 1256–57). The Legislature has addressed some of the limitations on victims' rights, such as expanding a victim's right to apply to appeal, following *Lopez–Sanchez.* The Legislature, however, in the 23 years since *Lodowski* and 13 years since *Cianos,* has not given much substance to the illusory nature of the enforcement of victims' rights. "The General Assembly is presumed to be aware of this Court's interpretation of its enactments and, if such interpretation is not legislatively overturned, to have acquiesced in that interpretation." *Williams v. State,* 292 Md. 201, 210, 438 A.2d 1301, 1305 (1981). Although a victim now has more opportunity to participate in an appeal, there remains no effective tangible remedy for a victim to seek to "undo" what already has been done in a criminal case. The rights, to seek invalidation of an otherwise legal sentence. The victims' rights provisions in Maryland law still lack adult teeth. Thus, the victim is left largely with extra-judicial remedies.

■■■ Although the Legislature responded to the specific issue decided in *Lopez–Sanchez,* Judge Wilner's description of the lack of remedies afforded victims of crime who have been denied their statutory rights remains largely apt:

Although disciplinary proceedings conceivably may be brought against a judge who wilfully violates clear statutory rights, there seems to be no efficient remedy for a victim ... if a judge, whether in good or bad faith, denies the victim the rights the Legislature has conferred.

*Lopez–Sanchez v. State,* 388 Md. 214, 231, 879 A.2d 695, 704 (2005) (Wilner, J., concurring). In the present case, there is

absolutely no indication that the Circuit Court acted in bad faith. The Circuit Court, on hearing Palmer's motion to vacate, admitted the apparent oversight regarding notice and attempted to remedy the mistake, although the remedy selected was beyond the Circuit Court's reach.[28]

Because Palmer's rights as a victim of crime were violated, we again shall fashion the only remedy of which we are legally capable. Palmer shall not be burdened with costs in this appeal, where her rights were violated through no fault of her own.[29]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE OF THE REMAINDER OF FIFTEEN YEARS IMPOSED BY THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THE CIRCUIT COURT**

---

**28.** Not all of Palmer's concerns are beyond the Circuit Court's authority to remedy. Palmer complains that the April 2005 sentence of probation does not have a "no contact order" as a term of probation. Judging from the facts of the present case and what we know about the Calvert County case, a "no contact order" may be justified. Maryland Rule 4–346(b) permits a court, *sua sponte*, to "modify ... any condition of probation" or "impose additional conditions." A condition of probation prohibiting a defendant from contacting the victim of a crime is not an illegal increase in sentence when added after the sentence of probation had originally been imposed. Then Judge Bell, writing for the Court of Special Appeals, addressed the issue in *Argabright v. State*, 76 Md.App. 706, 548 A.2d 149 (1988). In *Argabright*, the trial court, upon request of the probation supervisor, modified a year old probation order to "require that appellant have no contact with the victim except through legal channels." *Argabright*, 76 Md.App. at 707, 548 A.2d at 150. The Court of Special Appeals held that:

> The clear and unambiguous language of the Rule explicitly authorizes the court, "after giving the defendant an opportunity to be heard," to "impose additional conditions." That is precisely what occurred in this case. The added condition did not amount to an increase in the sentence. We perceive no error.

*Argabright*, 76 Md.App. at 708, 548 A.2d at 150.

**29.** "Because the petitioners were arguably denied their rights ... they will not be burdened with the payment of court costs in the instant case." *Cianos*, 338 Md. at 413, 659 A.2d at 295; *Lamb v. Kontgias*, 169 Md.App. 466, 483 n. 11, 901 A.2d 860, 870 n. 11 (2006) (same).

WITH INSTRUCTIONS TO REINSTATE THE SENTENCE OF PROBATION IMPOSED ON 8 APRIL 2005 AND TO CONDUCT ANY FURTHER PROCEEDINGS DEEMED NECESSARY OR DESIRABLE THAT ARE NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY, MARYLAND.